Stephen FRANK and Janet
Frank, Respondents,

v.

ILLINOIS FARMERS INSURANCE
CO., Appellant.

No. C8–82–655.

Supreme Court of Minnesota.

July 22, 1983.

Rehearing Denied Sept. 8, 1983.

Rider, Bennett, Egan & Arundel, Eric J. Magnuson and Michael D. Tewksbury, Minneapolis, for appellant.

Schneider Neeser Beccu & Bruce, Scott W. Lofthus, Ronald H. Schneider and John Kallestad, Willmar, for respondents.

WAHL, Justice.

Respondents Stephen Frank and Janet Frank brought this declaratory judgment action for a determination that the automobile insurance contract of Stephen Frank with Illinois Farmers Insurance Company (Illinois Farmers) provides, by operation of law, for underinsured motorist coverage because the mandatory offer of such coverage, required by Minn.Stat. § 65B.49, subd. 6(e) (1976) (repealed 1980), was not made. Illinois Farmers claimed their agent had made an offer which complied with the statute. After a trial to the court, the Kandiyohi District Court concluded that a proper statutory offer had not been made and that the policy must provide underinsured motorist coverage of $100,000/$300,-000. Illinois Farmers appeals. We affirm.

In 1976, Stephen Frank applied for and received Insurance Policy No. 8781–3099 with Illinois Farmers covering the automobile Janet Frank was driving in March 1977 when she sustained injuries in a collision with the automobile of Timothy Squier, whose liability insurance was limited to $100,000. The Franks were awarded a judgment of $172,436.46 against Squier for Janet's injuries. Because Squier thus qualified as an underinsured motorist, the Franks looked to Illinois Farmers for recovery of the remainder of the judgment from the policy under which Stephen Frank was the named insured, and Janet Frank was insured as a spouse of the named insured residing in the same household. Illinois Farmers denied underinsured coverage, claiming that both Stephen and Janet had rejected an offer of such coverage made by agent Ronald Prow at the time the policy was issued.

Evidence introduced at trial indicates that prior to April 1976, Stephen Frank had a policy of automobile insurance with Aetna Casualty and Surety Company (Aetna) that included underinsured motorist coverage for the two insured vehicles. He had relied on the advice of his Aetna agent, Einar Carlson, with regard to policy coverages. Desiring to change insurance agents for convenience' sake, he called Ronald Prow, Illinois Farmers' agent in Wilmar, indicating that he wanted to apply for automobile insurance through Prow's agency and wanted the same coverage he had with Aetna. Prow, who had previously asked for an opportunity to bid on Frank's automobile insurance, asked Stephen to send the Aetna policies to him. Janet, who worked in an office next door, delivered the policies. Prow testified that he discussed various coverages with Janet prior to April 29, 1976, with the aid of a 30/60 brochure which explained all of the automobile coverages available, and that he had prepared a 30/60 brochure for the Franks, which Janet took to Stephen, listing all coverages and the premiums for such coverages. The trial court found, however, that Prow did not keep a copy of the brochure and had no written memorandum in his file concerning his meetings with the Franks or his conversations with them at any time. According to Prow, Janet Frank returned later, said they wanted the policy, indicated desired coverages, but specifically excluded underinsured coverage. Prow prepared an application for the policies issued in the name of Stephen Frank, increasing liability coverage and uninsured coverage but excluding underinsured coverage for which there is no specified place provided in the coverage section of the application. He testified that he talked with Stephen for 5 minutes in the hallway outside Janet's office, explaining lack of underinsured coverage and its cost, before Stephen signed the application. Stephen denied that the meeting in the hallway took place or that he had received any explanation ever of underinsured coverage and its premium cost. He testified that he had signed the application at his home when Prow came to inspect one of the cars. Janet testified that Prow had not explained underinsured coverage to her, nor could she recall Prow's use of the 30/60 brochure or any explanation of coverages or premiums. The trial court found that an offer of underinsured coverage was made to Janet Frank but not to Stephen Frank. The court then held that an offer to Janet was insufficient to comply with the statutory mandatory offer requirement because the statutory offer must be made to the person applying for the coverage, i.e., the person who is the owner of the policy, to whom the insurance company looks for premiums, provides appropriate notices, and provides notice of cancellation.

1. Minnesota Statute § 65B.49, subd. 6(e) [1] did not specify to whom the mandatory offer of underinsured motorist coverage must be made. Appellant argues that, since both the Minnesota no-fault automobile insurance act, Minn.Stat. §§ 65B.41–.71 (1982), and the policy of insurance issued by Illinois Farmers to Stephen Frank define named insured to include both spouses, if residents of the same household, an offer to one named insured is an offer to the other and comports with the requirements of

---

1. Minn.Stat. § 65B.49, subd. 6(e) (1976) (repealed 1980) provided, in pertinent part:

    Subd. 6 * * * Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

    \*     \*     \*     \*     \*

    (e) Underinsured motorist coverage whereby subject to the terms and conditions of such coverage the reparation obligor agrees to pay its insureds for such uncompensated damages as they are legally entitled to recover on account of a motor vehicle accident because the total damages they are legally entitled to recover exceed the residual liability limit of the owner of the other vehicle, to the extent of the residual liability limits on the motor vehicle of the person legally entitled to recover or such smaller limits as he may select less the amount paid by reparation obligor of the person against whom he is entitled to recover. His reparation obligor shall be subrogated to any amounts it pays and upon payment shall have an assignment of the judgment if any against the other person to the extent of the money it pays.

subd. 6(e). The argument is appealing but cannot be made to fit the facts of this case.

■ Appellant's reliance on the policy definition of insured is misplaced here, because at the time the offer was required to be made there was no policy in existence. There was only an application for a new policy of insurance, and Stephen Frank was the applicant. An application for insurance is merely an offer; no contract arises until the application is accepted by the insurer and all conditions precedent are complied with. *League General Insurance Co. v. Tvedt,* 317 N.W.2d 40, 43 (Minn.1982). In considering events taking place prior to actual contract formation, therefore, we look not to the policy but to any controlling statutes and to contract law.

The no-fault act, section 65B.43, subd. 5, defines "insured" in the context of who is covered under a policy of insurance but not in terms of those to whom offers of optional coverage must be made.[2] It seems clear that an insurer could not use that definition and make the mandatory offer to any possible insured; as respondents note, an offer to a minor residing in the household could not suffice under the statute.

■ Appellant urges as precedent for our decision in this case *Oncale v. Aetna Casualty & Surety Co.,* 417 So.2d 471 (La. App.1982), which held that the wife of a named insured husband could reject uninsured motorist coverage and by so doing bind both herself and her husband. *Oncale* is distinguishable. The Louisiana statute at issue, La.R.S. 22:1406(D)(1)(a), allowed rejection of uninsured motorist coverage by "any insured named in the policy," provided the rejection was in writing. The Minnesota no-fault act contains no such provision. It does contain, however, a provision that its main purpose is to provide compensation to injured persons through adequate coverage.[3] We note that under Minnesota insurance law notice of cancellation, reduction of coverage, or nonrenewal of insurance must be given to the named insured. Minn.Stat. §§ 65B.16–.18 (1982). For the same reason that cancellation statutes require clear and adequate notice to the named insured, to give the insured an opportunity to provide continued adequate coverage, we construe the mandatory offer statute as requiring notice to the named insured if there is a named insured under an existing policy of insurance. If there is no policy of insurance in existence, however, when the insurer is required to give a mandatory offer, we hold that the offer must be made to the applicant, that person applying for the coverage, or to an agent authorized to act on the applicant's behalf. Illinois Farmers had no policy of insurance in existence on the Frank vehicles at the time it was required to make the mandatory offer. The applicant for the coverages subsequently issued in Policy No. 8781–3099 was Stephen Frank, who made the initial call to Prow requesting automobile insurance coverages, who

---

**2.** "Insured" means an insured under a plan of reparation security as provided by sections 65B.4 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

  (1) a spouse;
  (2) other relative of a named insured or
  (3) a minor in the custody of a named insured or a relative residing in the same household with a named insured.

A person resides in the same household with the named insured if that person usually makes his home in the same family unit, even though he temporarily lives elsewhere.
Minn.Stat. § 65B.43, subd. 5 (1982).

**3.** Minn.Stat. § 65B.42 (1982) provides in pertinent part:

The detrimental impact of automobile accidents on uncompensated injured persons, upon the orderly and efficient administration of justice in this state, and in various other ways requires that sections 65B.41 to 65B.71 be adopted to effect the following purposes:

  (1) To relieve the severe economic distress of uncompensated victims of automobile accidents within this state by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident;

did, in fact, sign the application, and who then did become the specific named insured on the policy. The mandatory offer of underinsured motorist coverage should have been made to Stephen Frank.

■ The trial court found that no offer of underinsured coverage was made to Stephen Frank, the applicant. We will not upset the factual finding of a court sitting without a jury absent a determination that the finding is clearly erroneous. Minn.R. Civ.P. 52.01; *In re Estate of Boysen,* 309 N.W.2d 45, 47 (Minn.1981). The record reveals conflicting versions of the events surrounding the policy negotiations. That the trial court credited the testimony of Stephen Frank is not clearly erroneous. *Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86, 88 (Minn.1981).

2. Since we hold that the mandatory offer of underinsured coverage must have been made to the applicant for insurance in this case, and since that was not done, the question then arises as to whether, as appellant argues, Stephen Frank authorized Janet Frank to be his agent, so that an offer to Janet would be imputed to Stephen by rules of agency law. *Distillers Distributing Co. v. Young,* 261 Minn. 549, 552, 113 N.W.2d 175, 177 (1962).

■ Under our cases, the marital relationship standing alone does not constitute one spouse the agent of the other, but agency will be found where there is evidence that one spouse, expressly or impliedly, confers authority on the other to act on his or her behalf. *Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 198, 235 N.W.2d 831, 834 (1975); *Gorco Construction Co. v. Stein,* 256 Minn. 476, 478–79, 99 N.W.2d 69, 72–73 (1959).

■ The existence of an agency relationship is a question of fact. *Tonka Corp. v. Commissioner of Taxation,* 284 Minn. 185, 191, 169 N.W.2d 589, 593 (1969). Under Minn.R.Civ.P. 52.01, a trial court sitting without a jury is mandated to find specially the facts necessary to support his conclusions of law. The trial court here made no factual finding on the issue of agency,

which was referred to at trial but not pleaded. Neither party requested such a finding, either prior or subsequent to the issuance of the findings of fact, conclusions of law and order for judgment. Where the court fails in its duty to make a finding, the burden is on the parties to alert the court by a motion for amended finding under Minn.R.Civ.P. 52.02. *Midway Mobile Home Mart, Inc. v. City of Fridley,* 271 Minn. 189, 193, 135 N.W.2d 199, 202 (1965). This court, upon appeal from judgment, determines whether the conclusions upon which the judgment is based find support in the findings of the trial court. *Naffke v. Naffke,* 240 Minn. 468, 471–72, 62 N.W.2d 63, 66 (1954). We will determine whether the evidence that supports those findings is sufficient whether or not the party raising the question of sufficiency has made objection to or requested amendment of the findings in the trial court. Minn.R.Civ.P. 52.02. Where, as in this case, however, there was neither a conclusion nor a finding on the issue of agency and an omitted finding in that regard was not brought to the attention of the trial court in the motion for amended findings, there is nothing before this court for review on that issue. We, therefor, decline to review the agency issue.

Respondents question, by notice of review, the adequacy of the offer that the trial court found Prow had made to Janet. They cite *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849, 852 (Minn.1982), which holds that the insurer must offer underinsured motorist coverage in an amount equal to the insured's residual liability limits and at "lower limits which the insured may select," and note appellant's admission that no offer at lower or smaller limits was made. We need not reach this issue because we have affirmed the trial court's determination that a proper statutory offer, even if substantively adequate, had not been made.

Affirmed.