James Brian DREWES, Appellant,

v.

Leonard W. LEVINE, Commissioner of Public Welfare, Respondent.

No. C7–83–1645.

Court of Appeals of Minnesota.

July 10, 1984.

John E. Mack, New London, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Ruth Mickelsen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by LANSING, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant James Drewes petitioned the Commissioner of Public Welfare for termination of his mentally ill and dangerous status and for immediate discharge from

his commitment to Willmar State Hospital. The Commissioner denied his petition and Drewes appealed to the three judge appeal panel appointed by the Supreme Court. After an evidentiary hearing the appeal panel denied the petition but retained jurisdiction for one year to monitor the placement of Drewes in a less restrictive environment. From that order Drewes appealed.

We reverse and remand.

## FACTS

On August 22, 1981, Drewes was adjudicated mentally ill and dangerous and committed by the Itasca County Court. The Itasca County Attorney had instituted commitment proceedings against Drewes after he fired a shotgun at a law enforcement officer during a drinking episode. Drewes was placed in Willmar State Hospital where he received psychiatric treatment and chemical dependency counseling.

At the de novo hearing before the appeal panel, expert testimony established that Drewes had a bipolar affective disorder resulting in manic and depressive behavior. Drewes is also chemically dependent on alcohol. His manic-depressive condition can be controlled by lithium medication. The consumption of alcohol, however, counteracts the effect of lithium. Drewes had been drinking as recently as three months before the hearing indicating he could not be expected to abstain outside of a controlled environment.

In the appeal panel's order, memorandum, and in its comments at the end of the hearing it held that a full discharge was not warranted. It recommended that the staff at Willmar State Hospital find a less restrictive environment, or halfway house, in which to place Drewes. In order to further monitor Drewes' case, the appeal panel continued the matter for one year. The appeal panel, however, made no specific findings of fact to support their decision.

## ISSUES

1. What burden of proof does petitioner carry in a discharge hearing to show that he is no longer mentally ill and dangerous?

2. May a petition for discharge from a mentally ill and dangerous commitment be denied in the absence of specific findings of fact?

## ANALYSIS

Drewes contends that the appeal panel erred by requiring him to show he met the standard for discharge and that the burden properly lies upon the Commissioner. The Commissioner urges, as he did before the appeal panel, that the burden is upon the petitioner to show by clear and convincing evidence that commitment is no longer necessary. While the appeal panel did not clearly indicate how it allocated the burden, the issue is fairly raised on this appeal.

Section 253B.18 (Supp.1983) of the Minnesota Commitment Act of 1982 specifies the procedures for discharging a person committed as mentally ill and dangerous. After a person committed as mentally ill and dangerous petitions the Commissioner for discharge, a special review board conducts an evidentiary hearing and makes a recommendation to the Commissioner. Minn.Stat. § 253B.18 subd. 5. The Commissioner's order granting or denying the petition may be appealed to a three judge appeal panel appointed by the supreme court. Minn.Stat. § 253B.19 subd. 1 (Supp. 1983); Minn.Stat. § 253B.19 subd. 2 (1982). The appeal panel then conducts a de novo evidentiary rehearing. Minn.Stat. § 253B.19 subd. 2.

■ Minn.Stat. § 253B.18 subd. 15 (1982) specifies the standard the Commissioner must apply on a petition for discharge. No separate standard is given for the appeal panel review. Since the appeal panel is reviewing the Commissioner's decision, it should apply the same standard:

A person who has been found by the committing court to be mentally ill and dangerous to the public shall not be discharged *unless* it appears to the satisfaction of the commissioner, after a hearing and a favorable recommendation by a majority of the special review board, that

the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.

In determining whether a discharge shall be recommended, the special review board and commissioner shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the patient in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

Minn.Stat. § 253B.18 subd. 15 (emphasis added). The phrase "unless it appears to the satisfaction of the commissioner" implies that the commitment should be continued absent a showing of some kind that discharge is required. See Janus & Wolfson, *The Minnesota Commitment Act of 1982: Summary and Analysis,* 6 Hamline L.Rev. 41, 88 (1983) (interpreting this section to place the burden upon petitioner). Thus the burden rests upon Drewes to show the requirements of Minn.Stat. § 253B.18 subd. 15 are met.

A more difficult question is what the burden should be. Subdivision 15 uses the words "satisfaction of the commissioner." Other than those words the new act is silent. Drewes advocates a preponderance of the evidence burden. The Commissioner argues that the burden is by clear and convincing evidence, citing Janus and Wolfson, *The Minnesota Commitment Act of 1982: Summary and Analysis,* 6 Hamline L.Rev. at 88.

The Janus & Wolfson article provides a thoughtful and comprehensive analysis of the 1982 commitment act. It points out how difficult it may be for a mentally ill and dangerous patient to meet the standard for discharge:

The difficulty stems from the nature of the patient's burden, which requires him to prove a negative fact, based upon an inexact science, and a data base which is of questionable relevance. As a result, some patients who are no longer in fact dangerous may be denied a discharge because they are unable to prove that they will not be dangerous in the future. *Id.* at 88.

Janus and Wolfson conclude, however, that the burden to gain discharge is by clear and convincing evidence. "This burden is required for the original MI & D commitment, presumably the same standard would be required for release." *Id.* at 88, n. 287. We disagree with that presumption. In *Lausche v. Commissioner of Public Welfare,* 302 Minn. 65, 69–70, 225 N.W.2d 366, 369 (1974), *cert. denied,* 420 U.S. 933, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975), a similar argument was advanced under the former commitment act but rejected by the supreme court. The *Lausche* court concluded that the burden is by a preponderance of evidence quoting the following language from *In re Masters,* 216 Minn. 553, 13 N.W.2d 487 (1944):

That she should assume the burden of proof to establish her restoration to capacity is perfectly proper, for the law rightfully presumes that a condition of feeble-mindedness or insanity once shown to exist will thereafter continue. We recognize that in committing the less fortunate members of society to our public institutions the courts are not penalizing them; yet a proper respect for our fundamental American concepts of liberty and freedom impels us to hold that these unfortunates have met the full measure of proof entitling them to a decree of restoration to capacity when they prove their present mental capacity by a *fair preponderance of the evidence.*

*Id.* at 562, 13 N.W.2d at 492 (emphasis supplied).

Given the great obstacles to discharge imposed by the circumstances of commitment, the state's interest in the health and safety of the public and mentally ill and dangerous patients is adequately served by a preponderance of evidence burden. Requiring a higher standard of proof would unnecessarily detain individuals capable of adjusting to society and needlessly burden

our mental health institutions with more patients.

Drewes further argues that the appeal panel erred by not making specific findings of fact after the de novo hearing. While the Commissioner admits the appeal panel made no specific findings of fact, he claims the order, memorandum, and the chief judge's comments on the record clearly identify the factual bases for its decision. Alternatively, the Commissioner argues that this court should refuse to review the issue because the petitioner failed to request amended findings.

The order and memorandum state little other than that the matter is continued for one year, the court retains jurisdiction, and Drewes is to be placed in a less restrictive environment within 60 days. At the close of the hearing, the chief judge announced the decisions of the panel.

JUDGE KALINA: Thank you. The Court finds that a discharge as requested by the Petitioner, a full discharge, is not appropriate at this time.

We do, however, feel that all efforts should be made to place him in a less restrictive placement such as a halfway house. We would request that the Hospital accomplish this in less than 60 days if possible.

The Court will retain jurisdiction for one year to monitor his progress, and anytime within that period either side is free to come in for any further relief that they may so desire, so obviating the necessity of going before the Review Board for any discharge, provisional discharge or other further placement.

I think that covers it. Good luck.

MR. DREWES: Your Honor, could I ask a question?

JUDGE KALINA: Sure.

MR. DREWES: My feelings that I am here today is to appeal the denial of discharge from my MID commitment. So I still am Mentally Ill and Dangerous for one year?

JUDGE KALINA: Well, I guess that would be it. We have taken no specific action on the dangerousness separate from a full discharge.

However, it's our feeling that to give you the protection during this period that we would continue that and see how you work out in a halfway house. Then you are free to have your lawyer come back at any time that he deems it appropriate for further relief.

MR. DREWES: Thank you.

 The comments of the chief judge can at best be characterized as a conclusion that Drewes is dangerous. As such, they are not findings of fact nor a substitute for findings.

Further, Minn.Stat. § 253B.18 subd. 15 requires the appeal panel to consider whether Drewes could adjust to open society, whether he was dangerous, and whether he needed further inpatient treatment, *Reome v. Levine*, 350 N.W.2d 428 (Minn.Ct. App.1984). Other than the chief judge's comment on Drewes' dangerousness, the record, order, and memorandum do not show whether the panel considered the legislatively specified factors. Since the grounds for the appeal panel's decision are not clearly identified, and since such findings are needed for review of their decision, the Commissioner's argument fails.

 The Commissioner's alternative argument that Drewes cannot raise the lack of findings because he did not request amended findings relies upon *Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307 (Minn.1983). In *Frank* the trial court failed to draw a conclusion or findings of fact on an issue. The supreme court held that where neither party requested a finding *and* the court drew no conclusion or findings on the issue it would not review the agency issue. *Id.* at 311. In this case the appeal panel did draw a conclusion on the dangerousness issue. Therefore, *Frank* does not apply as the Commissioner suggests since this court has a conclusion to review.

### DECISION

We reverse this matter and remand it to the appeal panel for proceedings consistent with this opinion.

Reversed and remanded.