**Homer JARVIS, Appellant.**

v.

**Leonard W. LEVINE, Commissioner of Public Welfare, Respondent.**

No. CX–84–2010.

Court of Appeals of Minnesota.

March 19, 1985.

Charles H. Williams, Jr., St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mary L. Stanislav, Sp. Asst. Atty. Gen., St. Paul, John M. Burman, Laramie, Wyo., for respondent.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Homer Jarvis appeals the October 1984 denial by the supreme court appeal panel of his request for a transfer from the security hospital to the open hospital at Willmar. We affirm.

## FACTS

Jarvis, a 50 year old man, was committed as mentally ill and dangerous to the St. Peter Security Hospital in 1977 after he shot and killed his sister. He has been diagnosed as paranoid and paranoid schizophrenic. Jarvis petitioned for a transfer to the open state hospital at Willmar. *See* Minn.Stat. § 253B.18, subd. 5 (1984). In 1984, the special review board concluded transfer could not be accomplished with a reasonable degree of safety to the public. The board recommended denial of the petition for transfer, and the Commissioner of Human Services denied the petition. Jarvis then sought review of that decision by the three-judge supreme court appeal panel. *See* Minn.Stat. § 253B.19 (1984).

A hearing was held by the appeal panel in September 1984. St. Peter staff psychol-

ogist Stan Johnson testified Jarvis has refused medication since May 1982, is frequently verbally abusive, and is physically violent. Johnson testified the treatment program designed to deal with Jarvis' anger and denial of his mental illness is ineffective because Jarvis refuses to cooperate or to participate in programmed activities. Jarvis complains that hospital staff are poisoning him and drugging him at night. He has made note of the license numbers of cars driven by staff members and threatened revenge. Johnson concluded continued commitment at the security hospital was needed to protect the safety of the public. At the time of the hearing, the security hospital was considering involuntary medication of Jarvis.

The appeal panel found that Jarvis is paranoid and suffers from a fixed persecutorial delusional system, and that he refuses medications and will not cooperate with treatment. The panel also found "a transfer to an open hospital setting could not be made with safety to others, would not be appropriate and that the Appellant continues to be in need of the facilities available at Minnesota Security Hospital." The transfer petition was denied. In an attached memorandum, the appeal panel noted Jarvis continues to be dangerous, hostile and uncooperative.

Involuntary administration of medication began in December 1984.

### ISSUE

Whether the appeal panel properly denied appellant's petition for transfer to an open hospital?

### ANALYSIS

A patient may not be transferred from "the Minnesota Security Hospital unless it appears to the satisfaction of the commissioner, after a hearing and favorable recommendation by a majority of the special review board, that the transfer is appropriate." Minn.Stat. § 253B.18, subd. 6 (1984). The statute sets out the factors to be considered in ruling on a transfer petition:

(i) the person's clinical progress and present treatment needs;

(ii) the need for security to accomplish continuing treatment;

(iii) the need for continued institutionalization;

(iv) which facility can best meet the person's needs; and

(v) whether transfer can be accomplished with a reasonable degree of safety for the public.

*Id.*

The special review board found Jarvis had made little clinical progress, that he remained deluded and potentially dangerous, that treatment in a secure facility was still required, and that a transfer could not be accomplished with safety to the public. The review board was also "concerned that Mr. Jarvis is maintained at the Minnesota Security Board without any meaningful treatment." They noted "Mr. Jarvis might be an appropriate candidate for involuntary medication" and that he needed "to have predetermined realistic standards in the area of verbal abusiveness which he must meet in order to qualify for transfer."

The presiding judge of the appeal panel observed at the hearing that Jarvis' illness prevented him from cooperating in his treatment program and that refusal prevented his progress towards discharge or transfer. Involuntary administration of medications was expected to lessen Jarvis' hostility to the treatment program. The panel was informed that involuntary administration of anti-psychotic medications was under current consideration.

On appeal to this court, Jarvis argues the denial of his transfer request is unsupported by the evidence. The appeal panel will be reversed only if their decision was clearly erroneous. This court will not weigh the evidence as if trying the matter de novo, but must examine the record to determine whether "the evidence as a whole sustains the appeal panels' findings." *Johnson v. Noot*, 323 N.W.2d 724, 728 (Minn.1982). The record amply supports a conclusion that treatment must

take place within a secure facility, that Jarvis still requires institutionalization at St. Peter, and that transfer to an open hospital may present a danger to the public. *See* Minn.Stat. § 253B.18, subd. 6.

The appeal panel was also required to review Jarvis' present treatment needs and the testimony was undisputed that his needs were not then being met at St. Peter. However, psychologist Stan Johnson represented that administration of involuntary medications was being considered. No one statutory factor, including treatment, is dispositive of a transfer petition, and there is no evidence in the record regarding the treatment programs available at Willmar State Hospital. We cannot determine if treatment at Willmar would better serve to make "further custody, institutionalization, or other services unnecessary." *See* Minn. Stat. § 253B.03, subd. 7 (1984). According to a letter dated January 4, 1985, from the Medical Director at St. Peter, Jarvis is now receiving medication on an involuntary basis at St. Peter and he is significantly improved.

A patient's rights to treatment or release (or transfer) may sometimes be difficult to reconcile with the patient's right to be free of involuntary medications. It appears from the record that Jarvis' right to treatment has not been met at St. Peter in the past.

We are concerned that the treating facility apparently did not revise the treatment plan or begin the process of obtaining authorization for involuntary medication until two and one-half years after Jarvis refused to take his prescribed medication, although his behavior became more hostile, suspicious and aggressive thereafter. In fact, a psychiatric progress note made when Jarvis discontinued voluntary medications in 1982 predicted he "will show a fairly rapid clinical deterioration. Should this take place * * * it will establish firmly the fact that he needs medication."

We are not presented with an appeal from involuntary medication orders and we take no position on whether medications are appropriate in this case. On the other hand, the Legislature specifically ordered consideration of the patient's present treatment needs when ruling on a transfer petition. Denial of transfer petitions where the treating facility is not meeting the needs of the patient may result in the abridgement of the patient's statutory right to treatment. Jarvis' treatment needs may now be met, and the right to treatment issue is not squarely before us here in this case.

**DECISION**

 The appeal panel properly denied appellant's request for transfer from the security hospital.

Affirmed.