**Christopher LINDER, Appellant,**

v.

**COMMISSIONER OF HUMAN SERVICES, Respondent.**

**No. CO–86–1064.**

Court of Appeals of Minnesota.

Oct. 21, 1986.

David Essling, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Kathy Meade Hebert, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and SEDGWICK and NIER-ENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Christopher Linder seeks review of an order of the supreme court appeal panel affirming the order of the Commissioner of Human Services directing Linder's transfer to the department of corrections. We affirm.

## FACTS

Linder, a thirty-three year old man with a long history of hospitalization, mental health and chemical dependency treatment, and incarceration, was committed to Anoka State Hospital. In July 1976 Linder stole keys from a staff member, escaped from the locked building where he was held, and killed a woman in a nearby residential area.

Linder was committed to the Minnesota Security Hospital for an indeterminate period as a mentally ill and dangerous person. In February 1978 he was found competent to stand trial. He was convicted of murder in the first degree and the conviction was affirmed on appeal. See State v. Linder, 304 N.W.2d 902 (Minn.1981).

Linder continued to be treated at the Minnesota Security Hospital. He was often uncooperative and sometimes refused to take prescribed medications. In October 1985 Linder petitioned for a transfer to the department of corrections but later withdrew the request. A hospital petition for transfer was also filed. The special review board recommended granting the hospital's transfer request and the commissioner ordered Linder transferred to the department of corrections.

Linder petitioned for review by the supreme court appeal panel, which held a hearing on May 23. Linder argued the commissioner must establish the appropriateness of transfer by clear and convincing evidence, while the commissioner argued the proper standard was the preponderance of the evidence.

The key dispute was whether the security hospital or a correction facility could better meet Linder's needs. The psychologist on the security hospital unit to which Linder was assigned testified Linder beat another patient with a club made from a furniture leg. The psychologist testified Linder's psychosis was in remission but Linder refused to cooperate with treatment efforts and the psychologist thought a transfer might motivate Linder to cooperate. Oak Park Heights provided a closer psychiatrist-to-patient ratio.

The staff psychologist at the security hospital told the appeal panel of the security hospital's unsuccessful attempts for ten years to motivate Linder to obtain a high school diploma. The staff psychologist described Linder as a very manipulative person who frequently confronted and intimidated other patients. The staff psychologist believed a transfer to the department of corrections was desirable and felt the likely benefits of transfer outweighed the prospect of continuing to "warehouse" Linder at the security hospital.

A clinical psychologist for the department of corrections testified that if Linder was actively psychotic at the time of the transfer, he would be immediately admitted to the mental health unit at Oak Park Heights. Therapy is available from the department of corrections, with only eight patients on the mental health unit assigned to each psychiatrist, permitting greater involvement. The corrections system has extensive experience treating antisocial personalities and those suffering from schizophrenia. If all these treatment methods are unsuccessful, Linder could still be transferred back to the security hospital.

Linder called a psychologist who had not worked at any state hospital in fifteen years or a prison for almost twenty years, who testified Linder would not receive proper programming from the corrections system and could regress. He agreed Linder suffers from chronic paranoid schizophrenia and that Linder's responses to his questions were sometimes manipulative,

but he testified Linder was not suicidal, actively hallucinating or delusional. He predicted Linder will remain psychotic for the rest of his life. This witness felt Linder's best interests were served by continued treatment at the security hospital, since Linder had remained fairly stable there. Although he saw disadvantages to the transfer, he concluded *Linder's* opposition to the transfer was not based on reason.

The appeal panel found Linder was not benefiting from treatment efforts at the security hospital and that Oak Park Heights may be better able to provide for his treatment needs. The transfer order of the commissioner was affirmed. On appeal, Linder argues the appeal panel's decision was not supported by clear and convincing evidence, the standard he claims is required.

### ISSUES

1. What standard of proof applies to petitions to transfer mentally ill and dangerous patients?

2. Is the decision to transfer Linder supported by the evidence?

### ANALYSIS

Patients committed as mentally ill and dangerous persons "shall not be transferred out of the Minnesota Security Hospital unless it appears to the satisfaction of the commissioner, after a hearing and favorable recommendation by a majority of the special review board, that the transfer is appropriate." Minn.Stat. § 253B.18, subd. 6 (1984). Although the statute specifically authorizes transfer to a corrections facility and sets forth five factors to consider, it is silent on the standard of proof to be employed in determining whether it has been shown to the commissioner's "satisfaction" that transfer is appropriate. Linder argues for adoption of the "clear and convincing evidence" standard applied to initial commitments, while the commissioner urges the "preponderance of the evidence" standard.

Before a proposed patient may be committed to the security hospital, it must be shown by clear and convincing evidence that he or she is mentally ill and dangerous to the public. *Id.*, subd. 1. After commitment, a petition for "transfer, discharge, provisional discharge, or revocation of provisional discharge * * * may be filed by the patient or by the head of the treatment facility." *Id.*, subd. 5. The petition is heard by the special review board, which issues a recommendation to the commissioner. *Id.* The commissioner's order may then be appealed to the supreme court appeal panel for a *de novo* evidentiary hearing. Minn.Stat. § 253B.19, subd. 2.

The only statutory indication of the standard of proof for transfer petitions is that it must appear "to the satisfaction of the commissioner * * * that the transfer is appropriate." Minn.Stat. § 253B.18, subd. 6. No separate standard is articulated for the appeal panel's review. The commitment act employs identical language for reviewing discharge petitions. *See id.*, subd. 15. We have construed "satisfaction of the commissioner" in that context to require the elements of discharge to be shown by the preponderance of the evidence. *Drewes v. Levine,* 352 N.W.2d 456 (Minn. Ct.App.1984). We weighed the "great obstacles to discharge" against the state's interest in protecting public safety and concluded that "[r]equiring a higher standard of proof would unnecessarily detain individuals capable of adjusting to society and needlessly burden our mental health institutions with more patients." *Id.* at 458–59.

We recognize the distinctions between this case and *Drewes.* A discharge petition is always brought by the patient, while a transfer may be sought by the patient or the treating facility. The parties do not dispute that the party seeking a transfer must bear the burden, but Linder apparently argues the treating facility should meet a higher standard when it seeks the transfer. The standard in discharge cases remains the same, whether the patient is seeking a discharge, as in *Drewes,* or the state is challenging a special review board recommendation for discharge. *Cf.*

*Lausche v. Commissioner of Public Welfare*, 302 Minn. 65, 225 N.W.2d 366 (1974), *cert. denied*, 420 U.S. 993, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1975). Linder offers no persuasive argument for imposing a higher standard for transfers proposed by the treating facility than Linder would have had to meet if he had not withdrawn his own transfer petition.

■ Another important factor compels us to agree the preponderance standard applies. Determination of the appropriate facility is essentially a treatment decision and treatment decisions are generally for mental health professionals, and not for the courts, to decide. *In re Pope*, 351 N.W.2d 682, 683 (Minn.Ct.App.1984) (citing *In re Moll*, 347 N.W.2d 67 (Minn.Ct.App.1984)). So long as Linder remains committed, he will have a right to treatment regardless of placement. Minn.Stat. § 253B.03, subd. 7.

■ Unlike the initial commitment process, placement decisions do not involve a fundamental right of liberty which may be abridged only upon clear and convincing evidence. *See Addington v. Texas*, 441 U.S. 418, 426–27, 99 S.Ct. 1804, 1809–10, 60 L.Ed.2d 323 (1979). Linder will not be eligible for parole on his murder conviction for another ten years. The proposed transfer to the department of corrections clearly does not infringe upon a fundamental right of liberty. We hold the party seeking to transfer a mentally ill and dangerous patient must establish by the preponderance of the evidence that transfer is appropriate.

2. The following factors are to be considered in determining whether a transfer is appropriate:

(i) the person's clinical progress and present treatment needs;

(ii) the need for security to accomplish continuing treatment;

(iii) the need for continued institutionalization;

(iv) which facility can best meet the person's needs; and

(v) whether transfer can be accomplished with a reasonable degree of safety for the public.

Minn.Stat. § 253B.18, subd. 6. Linder argues his present treatment needs require continued placement at the security hospital and that corrections facilities will not best meet those needs.

We will reverse the appeal panel "only if their decision was clearly erroneous. This court will not weigh the evidence as if trying the matter de novo, but must examine the record to determine whether 'the evidence as a whole sustains the appeal panels' findings.'" *Jarvis v. Levine*, 364 N.W.2d 473, 474 (Minn.Ct.App.1985) (citing *Johnson v. Noot*, 323 N.W.2d 724, 728 (Minn.1982)).

■ All witnesses agreed Linder requires further treatment. There was evidence Linder would not improve at the security hospital and that efforts to motivate Linder have been unsuccessful. All four psychologists, including Linder's own witness, spoke highly of the mental health unit at Oak Park Heights. The appeal panel specifically found that unit offered a favorable psychiatrist-to-patient ratio and could treat Linder. We cannot agree with appellant that the panel's decision to affirm the transfer order is clearly erroneous.

### DECISION

The Judicial Panel's affirming the transfer of appellant to the department of corrections is proper.

Affirmed.