**Roger A. PIOTTER, Respondent,**

v.

**Natalie Haas STEFFEN, Commissioner of Human Services, Appellant.**

**No. C0–92–957.**

Court of Appeals of Minnesota.

Sept. 29, 1992.

Review Denied Nov. 17, 1992.

Jon R. Duckstad, St. Paul, David E. Schauer, Sibley County Atty., Winthrop, for respondent.

Hubert H. Humphrey III, Atty. Gen., William H. Mondale, Spec. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by HUSPENI, P.J., and NORTON and FOLEY,* JJ.

## OPINION

NORTON, Judge.

Respondent Roger A. Piotter, who is committed as mentally ill and dangerous to the Minnesota Security Hospital, petitioned for transfer to an open hospital. The special review board recommended the transfer, but the Commissioner denied the petition. Respondent petitioned for rehearing and reconsideration. After a hearing, the judicial appeal panel authorized the trans-

---

* Retired judge of the Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

fer, with one judge dissenting. The Commissioner appeals, and we reverse.

## FACTS

Respondent, who suffers from a bi-polar disorder, is committed to the Minnesota Security Hospital. He is classified as mentally ill and dangerous. Respondent was committed to the hospital on November 14, 1990 for an indeterminate period. This appeal concerns whether respondent should be transferred to a different hospital.

In 1986, respondent received out-patient treatment at a mental health center for his disorder. The symptoms of his disorder had included extreme verbally and physically abusive behavior.

Respondent was discharged from the Willmar Regional Treatment Center on April 14, 1990. As part of his after-care program, he agreed to a behavioral contract which precluded him from living with his wife until a counselor determined it was appropriate. However, immediately following his discharge, respondent violated this contract and began residing with his wife without any determination by a counselor.

Respondent was verbally and physically aggressive toward his wife. He advised his wife continuously that he was going to give her five weeks of hell because he had been at Willmar for five weeks. He also advised her that he was going to "get even" with her and that he would get her committed. Respondent became obsessed with sexual matters and forced himself on his wife, giving as the reason that he was making up for the five weeks that he spent at Willmar.

On the day of his release, respondent found an old broom handle, and told his children he was going to use it on their mother. He then sought to get his wife in bed. When she refused, he slapped her on the side of the face three times, pulled her hair, knocked off her glasses, and hit her in the eye. When he finally succeeded in getting his wife into bed, respondent sexually abused her for two hours. He discussed poking a hot rod into her vagina and did insert the cut-off broom handle into her vagina.

On several occasions, respondent threatened his wife with death if she informed the police of his conduct. He also committed other acts of violence including choking his wife.

Respondent's actions eventually came to the attention of the authorities and he was charged with criminal sexual conduct in the first degree, fifth degree assault, and terroristic threats. These charges were dropped when appellant was later committed.

A petition was filed to commit respondent as mentally ill and dangerous. Following a hearing and a review, respondent was committed for an indeterminate period as mentally ill and dangerous on November 14, 1990.

Respondent later petitioned for transfer to an open hospital. On December 18, 1991, following a hearing, the special review board recommended a transfer. On February 11, 1992, the Commissioner rejected the recommendation, and ordered that respondent's petition be denied. Respondent petitioned for rehearing and reconsideration. On April 10, 1992, a hearing was held before the three-judge judicial appeal panel.

At the hearing, respondent testified that he is aware of his bi-polar disorder, and that he must take medication to control his mood swings. He stated that if transferred, he would take his medication and cooperate with the staff.

Respondent's wife testified that she intends to remain married to respondent and supports his transfer to an open hospital. She acknowledged that respondent has mood swings and that she continues to feel intimidated by him, especially when he is under pressure.

Dr. John Austin, a psychologist, testified in support of the transfer. He interviewed respondent at his attorney's request and read his chart, but has not treated him. Austin diagnosed respondent with bi-polar disorder, mixed, in partial remission, but did not believe appellant is presently dangerous.

Austin noted that while the security hospital has been reasonably successful in helping respondent understand the nature of his behavior and illness, it is time to focus on the dynamics of the relationship between respondent and his family and the general community. Austin believed the open hospital would be more conducive to this process, and respondent would be more accepting of it. In the current setting, respondent sees himself as not only receiving treatment, but as being incarcerated.

Testimony was also presented in opposition to the transfer. Respondent's social worker, Susan Hamilton, testified that respondent has not improved sufficiently to be released.

Dr. Stanley Shapiro, a psychiatrist who has seen respondent at least monthly since April 1991, diagnosed respondent as suffering from a bi-polar disorder, with partial remission. Shapiro characterizes respondent's partial remission as fragile. Shapiro specifically disagreed with Austin's testimony on several points. While respondent is in partial remission, he is unstable and could have a reoccurrence under stress. Shapiro noted respondent was not adjusting to the stress of moving to a less restrictive unit within the security hospital and concluded it likely that he would not adjust to an open hospital. Shapiro also disagreed with the testimony of Dr. Austin that merely transferring him to an open hospital would make him feel he is not being punished. Shapiro testified respondent does not always follow rules and questioned whether he would remain at the open hospital.

Shapiro believed that the security hospital is the best clinical facility to meet respondent's needs. It provides the support and security he needs to gain an understanding of his mental illness, to develop an understanding of other ways of dealing with his anger, and to prepare him for the open hospital.

Dr. Arnoldus Gruter, a psychologist who is responsible for monitoring respondent's psychological needs and goals, testified respondent is a very dangerous person. Respondent admits very superficially that he has a mental illness, but lacks insight and misunderstands and misinterprets his past maladaptive behavior, especially his extremely dangerous behavior towards his wife. Gruter disagreed with Dr. Austin's opinion that respondent should be transferred to an open hospital and testified that transfer at this point might prompt further dangerous activity. Gruter acknowledged that respondent has shown some insight, and it was likely he would take medication at the open hospital.

The majority of the judicial appeal panel found that respondent's treatment needs, including domestic counseling, can be met at an open hospital and that it can be accomplished with a reasonable degree of safety for the public. It ordered his transfer to the open hospital. One judge dissented and would have denied the petition to transfer.

The Commissioner appeals. Respondent filed a brief in support of the appeal panel's decision, and the county filed a brief in opposition to the decision.

## ISSUE

Were the judicial appeal panel's findings clearly erroneous and contrary to the evidence taken as a whole?

## ANALYSIS

Respondent was committed as mentally ill and dangerous for an indeterminate period to the Minnesota Security Hospital. Minn.Stat. § 253B.18, subd. 3 (1990). One who is committed as mentally ill and dangerous may be transferred only as provided in this section. *Id.*

Respondent petitioned for transfer to an open hospital. Minn.Stat. § 253B.18, subd. 5 (Supp.1991). Persons who have been found to be mentally ill and dangerous shall not be transferred unless it appears to the satisfaction of the Commissioner, after a favorable recommendation by the majority of the special review board, that the transfer is appropriate. Minn.Stat. § 253B.18, subd. 6(a) (1990).

The statute sets out five factors to be considered in determining whether a transfer is appropriate.

(i) the person's clinical progress and present treatment needs;

(ii) the need for security to accomplish continued treatment;

(iii) the need for continued institutionalization;

(iv) which facility can best meet the person's needs; and

(v) whether transfer can be accomplished with a reasonable degree of safety for the public.

*Id.* The special review board recommended the petition for transfer to an open hospital be granted. The Commissioner denied the petition.

■ The statute authorizes the patient to then petition a three-judge judicial appeal panel for rehearing and reconsideration of the decision by the Commissioner. Minn.Stat. § 253B.19, subd. 2 (Supp.1991). The hearing is de novo. *Id.* The petitioner has the burden of proof by a preponderance of the evidence. *Linder v. Commissioner of Human Servs.*, 394 N.W.2d 824, 827 (Minn.App.1986). The order of the appeal panel supersedes the order of the Commissioner. Minn.Stat. § 253B.19, subd. 3 (1990). The judicial appeal panel in this case, after a hearing, granted respondent's petition for transfer to an open hospital, with one judge dissenting. The Commissioner appealed from the order of the judicial appeal panel. Minn.Stat. § 253B.19, subd. 5 (1990).

■ In reviewing a decision of the appeal panel, the appellate court:

is not to weigh the evidence as if trying the matter *de novo*, but to determine from an examination of the record if the evidence as a whole sustains the appeal panel's findings. If it does so, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary.

*Johnson v. Noot*, 323 N.W.2d 724, 728 (Minn.1982), *quoted in Enebak v. Noot*, 353 N.W.2d 544, 548 (Minn.1984). The panel must address the statutory factors. *See*

*Drewes v. Levine*, 366 N.W.2d 719, 721 (Minn.App.1985), *pet. for rev. denied* (Minn. July 11, 1985).

Appellant contends that the appeal panel decision was clearly erroneous, and Sibley County concurs. Respondent argues the record discloses a factual basis to support the order for transfer to an open facility, and that the decision should be affirmed.

The appeal panel found that respondent's treatment needs can best be met at an open hospital, and that the transfer can be accomplished with a reasonable degree of safety for the public. The decision necessarily was based upon the testimony of respondent, his wife, and Dr. Austin, all of whom supported the transfer.

We first address the panel's apparent decision to credit the testimony of Dr. Austin over that of the treatment personnel from the security hospital. We recognize that in the case of expert opinion, the importance of trial court discretion takes on special significance. *In re Joelson*, 385 N.W.2d 810, 811 (Minn.1986). In cases addressing social security disability claims, courts have recognized that opinions by treating physicians, who have had a greater opportunity to observe the patient, should be given more weight than reports by physicians who have examined the claimant only once. *See Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir.1990), *concurring opinion overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991); *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir.1988).

The supreme court has used a similar theory as a basis upon which to reverse an appeal panel decision. In *Johnson v. Noot*, 323 N.W.2d 724, 728–29 (Minn.1982), the panel had relied upon the testimony of a doctor who based his conclusion that the patient continued to suffer from mental illness upon an examination of the patient's history, an hour-long examination, and an erroneous belief the patient had taken antipsychotic medication the past five years. The three doctors most familiar with his case testified he was not mentally ill within the meaning of the statute. The court reversed based upon this reliable evidence.

■ The testimony in this case by the treating professionals, who were very familiar with respondent's condition, should have been given greater weight than Dr. Austin's testimony, who had an inadequate amount of time to make an adequate evaluation of respondent.

■ The testimony overwhelmingly shows that respondent, who lacks insight into his condition, is far too dangerous to release to an open hospital, and the transfer cannot be accomplished with a reasonable degree of safety for the public. Further, the testimony shows that respondent's treatment needs can best be met by remaining at the security hospital. *See* Minn.Stat. § 253B.18, subd. 6.

While Dr. Austin believed respondent would not feel incarcerated at the open hospital, Dr. Shapiro disagreed. Testimony indicated that respondent clearly felt that way when he had been committed earlier to the same open hospital and that a mere transfer now would also not change this feeling.

■ In view of respondent's propensity for violence towards his wife, special care should be taken before considering transferring him to the open hospital. While Dr. Austin believed respondent was not a danger to his wife, testimony by treating personnel was to the contrary. Dr. Gruter indicated respondent is a very dangerous person because he lacks insight into his past maladaptive behavior, especially towards his wife. Dr. Shapiro specifically disagreed with Dr. Austin as to the stability of respondent's remission.

■ We also have grave reservations about the panel's decision to approve the transfer based upon the other supporting testimony. Respondent's testimony is obviously self-serving. As to his wife, there is no indication the appeal panel took into account the reality of her situation. While it may have been persuaded by her testimony, that testimony was likely influenced by fear of retribution, and we therefore strongly discount it. We have great concern as to the safety of respondent's wife should transfer occur. The panel was certainly within its discretion to consider the testimony of respondent and his wife, but we believe that the testimony of the treatment personnel too far outweighs it.

We agree with the appellant and reverse. The appeal panel's reliance upon the testimony of Dr. Austin, respondent, and his wife was clearly erroneous. The vast weight of the evidence, which was provided by personnel at the security hospital who interacted with and treated respondent, was apparently ignored by the appeal panel, and requires denial of the transfer. We note that the dissenting judge on the appeal panel would have denied the transfer. We express great concern about the safety of respondent's wife should the transfer occur at this time.

■ Finally, we wish to express concern with the abbreviated findings of the panel. *See In re Danielson*, 398 N.W.2d 32, 37 (Minn.App.1986). When faced with acutely conflicting testimony between an examining psychologist picked by respondent, on one hand, and respondent's treating psychiatrist, psychologist and social worker on the other hand, the appeal panel should have more carefully addressed the transfer criteria of Minn.Stat. § 253B.18, subd. 6.

## DECISION

The order of the appeal panel authorizing transfer is reversed, and respondent's petition for transfer is denied.