John H. RYDBERG, Respondent,

v.

Kevin GOODNO, Commissioner of Human Services, Appellant.

No. A04–1087.

Court of Appeals of Minnesota.

Dec. 7, 2004.

Lisbeth J. Nudell, Minneapolis, MN, for respondent John H. Rydberg.

Mark Lindahl, Assistant Blue Earth County Attorney, Mankato, MN, for respondent Blue Earth County.

Mike Hatch, Attorney General, Michael E. Burns, Assistant Attorney General, St. Paul, MN, for appellant commissioner.

Considered and decided by TOUSSAINT, Chief Judge; PETERSON, Judge; and KLAPHAKE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This is an appeal by the Commissioner of Human Services from a judicial appeal panel decision, which granted pass-eligible status to respondent John H. Rydberg, who is subject to an indeterminate commitment as a psychopathic personality. The commissioner contends that the judicial appeal panel erred as a matter of law (1) in requiring the commissioner to show by clear and convincing evidence that Rydberg should not be granted pass-eligible status after Rydberg established a prima facie case for being placed on pass-eligible status; and (2) in granting Rydberg pass-eligible status. Because the appeal panel did not err in its burden of proof determination and because the evidence supports the decision, we affirm.

## FACTS

Respondent John Rydberg has a long history of engaging in violent sexual assaults. In 1969, he was convicted of attempted rape. In 1975, he was convicted of forced penile-oral penetration. In 1976, following two violent sexual assaults committed at gunpoint, he was convicted of rape, attempted rape, sexual perversion, and operating a motor vehicle without the owner's consent.

Rydberg was then committed to a sex offender treatment program in Wisconsin.

He escaped in 1977 and in 1979. During the latter escape, he sexually assaulted a woman in Blue Earth County at knifepoint in the presence of her three children. He cut her thighs and clothes with the knife, threatened her and her children, and tried to strangle her. Rydberg was subsequently convicted of second-degree criminal sexual conduct and aggravated robbery.

In 1993, following his incarceration, Rydberg was committed to the Minnesota Sex Offender Program (MSOP) as a psychopathic personality for an indeterminate period of time. Although Rydberg initially refused to participate in treatment, he began to do so in 1998. During treatment, Rydberg self-reported dozens of additional rapes and sexual assaults. He then successfully completed a four-phase inpatient sex offender treatment program at MSOP's Moose Lake facility. On July 22, 2002, Rydberg was transferred to MSOP's St. Peter facility to begin the "transition phase" of his treatment.

When Rydberg arrived at St. Peter, he was initially escorted and observed by staff while he was working, but he was later allowed to engage in unsupervised activities on the grounds and at work. Additionally, Rydberg was allowed to go off campus on supervised trips. All of these activities took place without incident. Rydberg is currently working 33 hours a week, has groups twice a week for an hour and a half, and keeps daily logs of his activities to provide accountability. He believes the treatment program and relapse-prevention programs will be with him for life.

As part of his treatment, Rydberg prepared an eight-page proposed pass plan. Because he met the expectations of the transition-phase program and was adjusting well, in May 2003, the clinical director of MSOP notified the appropriate persons of her intent to grant Rydberg pass-eligible status. Following this notification, the Blue Earth County Sheriff's Department objected, as did the victim of Rydberg's last offense, and the issue came before the special review board. After a hearing, the review board recommended granting Rydberg pass-eligible status, but the commissioner denied the request.

Rydberg then petitioned for rehearing and reconsideration before the judicial appeal panel. At the hearing, the parties stipulated that Rydberg had made a prima facie showing that met his burden of persuasion. Rydberg nonetheless testified. No witnesses were called in opposition by the commissioner, but Blue Earth County presented testimony from a deputy sheriff and from the program manager for the Blue Earth County Mental Health Center.

The appeal panel subsequently concluded that Rydberg had sustained his burden of establishing that he qualifies for pass-eligible status. The appeal panel found that (1) Rydberg had fully met MSOP's clinical and program expectations; (2) the pass-eligible status was proposed by, and supported by, MSOP staff; (3) Rydberg received a unanimous recommendation for pass-eligible status from the special review board; and (4) the pass plan can be implemented while reasonably protecting the public. The appeal panel also concluded that the commissioner had failed to meet his burden of establishing, by clear and convincing evidence, that Rydberg should not be granted pass-eligible status. Accordingly, the judicial appeal panel reversed the commissioner's decision and granted Rydberg pass-eligible status. This appeal follows.

## ISSUES

1. After Rydberg sustained his burden of showing that he should be placed on pass-eligible status, did the judicial appeal panel err as a matter of law in requiring

the commissioner to show, by clear and convincing, evidence that Rydberg should not be granted pass-eligible status?

2. Did the judicial appeal panel err in granting pass-eligible status to Rydberg?

## ANALYSIS

### I.

■■■ Issues of statutory interpretation are reviewed de novo. *Hince v. O'Keefe,* 632 N.W.2d 577, 582 (Minn.2001). Findings of fact will not be reversed if the record as a whole sustains those findings. *Piotter v. Steffen,* 490 N.W.2d 915, 919 (Minn.App.1992), *review denied* (Minn. Nov. 17, 1992).

■■■ The commissioner first argues that the appeal panel erred in ruling that after Rydberg met the burden of showing that he should be placed on pass-eligible status, the burden shifted to the parties opposing pass-eligible status to show by clear and convincing evidence that he should not be granted pass-eligible status.

■■■ A pass is "any authorized temporary, unsupervised absence from a treatment facility." Minn.Stat. 253B.02, subd. 21 (2002). Passes play an important role in treatment and may allow a treatment team to evaluate the readiness of the patient to reenter the community. *County of Hennepin v. Levine,* 345 N.W.2d 217, 220 (Minn.1984) (addressing passes for mentally ill and dangerous patients). Before a patient committed as a psychopathic personality may be released into the community on a pass, the medical director of the treatment facility must approve pass-eligible status. Minn.Stat. 253B.18, subd. 4b(b).

At least ten days before making this determination, the medical director must notify certain persons of the intent to grant pass-eligible status and inform them of their right to seek review before the special review board. Minn.Stat. 253B.18, subd. 4b(b). Those to be notified include the committing court, the county attorney, the designated agency, an interested person, the petitioner, and the petitioner's counsel. *Id.* If any of those notified seek review of the proposal, they must file a notice of objection and a hearing will be held before the special review board. *Id.* The proposed status may not be implemented unless there is a favorable recommendation by a majority of the special review board and approval by the commissioner. *Id.* The commissioner's order may be appealed to the judicial appeal panel pursuant to Minn.Stat. 253B.19, subd. 2 (2002). Minn.Stat. 253B.18, subd. 4b(b).

Under Minn.Stat. 253B.19, subd. 2, "[t]he petitioning party bears the burden of going forward with the evidence. The party opposing *discharge* bears the burden of proof by clear and convincing evidence that the respondent is in need of commitment." *Id.* (emphasis added). The statute is silent as to the burden on those opposing actions other than discharge.

■■■ The commissioner first argues that after Rydberg met his burden of establishing that he should be granted pass-eligible status, the burden of proof should not then shift to the commissioner but should remain with Rydberg. Generally, "[w]hen a plaintiff proves a prima facie case and it is unrebutted by defendant, the plaintiff has met his burden of proof." *Fidelity Bank Trust Co., v. Fitzimons,* 261 N.W.2d 586, 590 (Minn.1977). This then shifts the burden of proof to the opposing party. *Id.* at 590 n. 10. When the appeal panel found that Rydberg met his burden because he fully met the clinical and program expectations for pass-eligible status, it is unclear what more the commissioner would have Rydberg prove. The appeal panel properly ruled that at this point, the burden

shifted to the parties opposing pass-eligible status.

Next, the commissioner argues that the burden for one opposing pass-eligible status should not be clear and convincing. He contends that the clear and convincing standard applies to discharges because they involve a liberty interest. Minn.Stat. 253B.19, subd. 2; *Linder v. Com'r. of Human Servs.*, 394 N.W.2d 824, 826 (Minn. App.1986). In contrast he asserts that pass-eligible status, like transfer, is a form of treatment and that the preponderance of the evidence standard should apply. *Linder,* 394 N.W.2d at 827; *see Levine,* 345 N.W.2d at 223 (noting that a pass program is a form of treatment).

*Levine* addressed the issue of whether, in the absence of a specific statutory provision, the special review board was required to approve the issuance of passes for one committed as mentally ill and dangerous. 345 N.W.2d at 223. Finding that because the pass program was part of the treatment and that public safety was adequately protected by the commitment and discharge process, the court held that to require special review board approval of passes would "eviscerate the physician's discretion necessary for treatment of patients committed as MID." *Id.*

Since *Levine,* however, the statute has been changed to its present form, which now requires the special review board to review pass-eligible status for one committed as psychopathic personality upon notice of objections. Minn.Stat. 253B.18, subd. 4b(b). Because the discharge decision requires clear and convincing proof by those objecting, so too should the pass-eligible decision. *See* Minn.Stat. 253B.19, subd. 2. We conclude that once Rydberg met his burden of proof, the appeal panel properly shifted the burden to those opposing pass-eligible status to prove, by clear and convincing evidence, that Rydberg should not be granted that status.

## II.

■ Next, the commissioner argues that even if the burden of proof shifted, he met that burden by establishing that Rydberg is not entitled to pass-eligible status. In reviewing a decision of the judicial appeal panel, this court does not weigh the evidence as if trying the matter de novo; rather, we examine the record to determine whether the evidence as a whole sustains the appeal panel's findings. *Johnson v. Noot,* 323 N.W.2d 724, 728 (Minn.1982). If it does, "it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.*

The commissioner contends that through the testimony of the Blue Earth County officials and Rydberg's own admissions, he met his burden of showing that Rydberg was not ready for unsupervised passes. First, he contends that Rydberg's testimony regarding his "fixation" with a woman on the grounds of the campus calls into question his clinical stability. While Rydberg testified that he found a woman on the grounds attractive, he also indicated he discussed it with members of his group. The record does not show the so-called "fixation" or that it called into question Rydberg's clinical stability.

Next, the commissioner cites Rydberg's admission that his anxiety level has increased with each reduction in custody and his acknowledgment that in, the past, he has dealt with stress through sexual aggression. He testified that he is presently taking medication for anxiety, and he explained that previously, when he had been feeling anxious and had increases in his sexual fantasies, he was not taking medication. Further, he explained that the medication helps him control them and

slows down his thinking. There was no evidence showing that this testament made Rydberg's pass-eligible status improper.

Next, the commissioner points to the testimony of the Blue Earth County witnesses that Rydberg had participated in unsupervised visits on campus for a very short time. As found by the appeal panel, Rydberg had done so for more than a year without incident. The commissioner also faults the treatment team for failing to take adequate precautions to ensure public safety. In response to these concerns, the appeal panel strongly recommended that the clinical director proceed cautiously and advise the sheriff when Rydberg is granted unsupervised passes.

Finally, the commissioner argues that there were concerns expressed by the county attorney's office as to Rydberg's violent and random assaults, his bold use of weapons, and his commission of offenses in the presence of family members. Rydberg does not deny that he engaged in violent criminal sexual conduct.

But, the panel found that Rydberg had established that (1) he understands the gravity of his crimes; (2) his treatment professionals agree that an unsupervised pass plan should be implemented with prescribed conditions, including time checks, check-in, evaluation procedures, and desti-nation limits, and Rydberg understands and accepts these conditions; (3) MSOP was developed and implemented with the intent of releasing "even the most violent sexual offenders" into the community after successful completion of the MSOP program; (4) Rydberg fully met the clinical and program expectations of MSOP; (5) and the conditions of the pass-eligible status will provide a reasonable degree of protection to the public and will enable Rydberg to begin a successful adjustment to the community.

We conclude that the record as a whole supports the appeal panel's findings. Because the findings are supported by the evidence and the law, the appeal panel did not err in deciding to grant Rydberg pass-eligible status.

## DECISION

The decision by the judicial appeal panel to grant Rydberg pass-eligible status is affirmed.