**Julian A. CAPRICE, f/k/a Wilbert E. Buckhalton, Appellant,**

v.

**Maria GOMEZ, Commissioner of Human Services, Respondent.**

No. C7–96–706.

Court of Appeals of Minnesota.

Aug. 6, 1996.

Review Denied Oct. 29, 1996.

Stephen D. Radtke, Bloomington, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul M. Landskroener, Asst. Atty. Gen., St. Paul, for respondent Com'r of Human Services.

Michael O. Freeman, Hennepin County Atty., Gayle C. Hendley, Asst. County Atty., Minneapolis, for respondent Hennepin County.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and FOLEY, J.

## OPINION

FOLEY, Judge.*

Julian A. Caprice was committed for an indeterminate period as a psychopathic personality. He petitioned for discharge, and the Commissioner of Human Services denied his petition. Caprice petitioned the judicial appeal panel for rehearing and reconsideration. The judicial appeal panel affirmed the decision of the Commissioner denying the petition. Caprice appeals, and we affirm.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Appellant Julian Caprice [1] has a lengthy history of violent sexual misconduct. In February 1979, after helping a woman remove her automobile from a snowbank, he raped her at gunpoint. He was convicted of first-degree criminal sexual conduct. After being paroled in June 1984, he raped his former girlfriend in December 1984. Several weeks later, he assaulted, raped, and threatened to kill the mother of the December 1984 victim because he was angry that she was encouraging her daughter to press charges. He pleaded guilty to third-degree criminal sexual conduct.

During Caprice's terms of imprisonment, he accumulated a long record of disciplinary violations. He has eloped from community placements and failed to complete sex offender treatment programs. Caprice was initially committed as a psychopathic personality, and his commitment was then made indeterminate. Both commitments were affirmed on appeal. *In re Buckhalton,* 503 N.W.2d 148 (Minn.App.1993) (initial commitment), *aff'd,* 518 N.W.2d 531 (Minn.1994); *In re Buckhalton,* No. C2–93–2428, 1994 WL 43870 (Minn.App. Feb.15, 1994) (indeterminate commitment), *review denied* (Minn. Mar. 31, 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 148, 130 L.Ed.2d 88 (1994).

Caprice sought discharge through a petition to the Commissioner of Human Services. After the special review board recommended against the petition, the Commissioner issued an order denying Caprice's request. Caprice then petitioned for rehearing and reconsideration before the judicial appeal panel.

At the hearing before the appeal panel, Dr. John Austin, a licensed psychologist who was the court-appointed examiner, testified Caprice met the factors for discharge. Caprice also testified as to his belief that he should be discharged. At the conclusion of Caprice's case, the Commissioner and Hennepin County moved to dismiss the petition, argu-

---

1. Caprice obtained a court order changing his name from Wilbert Eugene Buckhalton to Julian Arman Caprice on August 23, 1995.

ing Caprice failed to make a prima facie case that he met the statutory discharge criteria. The appeal panel denied the motions.

Douglas Fox, a licensed psychologist and board-certified forensics examiner who conducted an independent psychological evaluation of Caprice, testified he did not meet the discharge standards. Thomas Gratzer, M.D., senior forensic psychiatrist at the Minnesota Security Hospital, concurred with the opinion.

Testimony was also received regarding Caprice's recent inappropriate sexual behavior, in which he exposed himself to female staff and masturbated in public. Caprice's former wife testified that from June to September 1995 (during the pendency of the discharge proceedings), Caprice forced her by threats to have sometimes violent sex with other men while he listened on the telephone.

The appeal panel rejected Caprice's constitutional challenges and affirmed the order of the Commissioner of Human Services denying Caprice's petition for discharge.

Caprice appeals.

### ISSUES

1. Is it unconstitutional to require a person committed as a psychopathic personality to bear the burden of going forward with the evidence in a discharge hearing pursuant to Minn.Stat. § 253B.19, subd. 2 (1994), even though the state bears the ultimate burden of persuasion?

2. Is the requirement that the petitioning party bear the burden of going forward with the evidence void for vagueness?

3. Do the discharge criteria applicable to one committed as a psychopathic personality violate substantive due process?

4. Do these discharge criteria violate equal protection?

5. Is the psychopathic personality statute criminal in nature and does it violate constitutional guarantees against double jeopardy?

2. We reject the Commissioner's argument that Caprice was not aggrieved by the panel's ruling requiring him to go forward with the evidence because he successfully shifted the burden to the Commissioner. Caprice did not prevail and may seek review of the panel's decision.

6. Did the session law in which the legislature amended Minn.Stat. § 253B.19, subd. 2 (1992), to add the burden of proof provisions violate the single subject rule?

### ANALYSIS

1. Caprice raises constitutional challenges to the discharge proceedings. The appeal panel determined that Caprice bore the burden of proving beyond a reasonable doubt that the statutes he challenged were unconstitutional.

In *In re Linehan,* 544 N.W.2d 308, 316–17 (Minn.App.1996), *review granted* (Minn. Mar. 19, 1996), this court addressed the issue:

Individuals who challenge a statute's constitutionality usually bear the heavy burden of proving their claim beyond a reasonable doubt. However, if the statute infringes on a fundamental right, the burden shifts to the ***state*** to prove the law is necessary to a compelling interest. * * *

\*    \*    \*    \*    \*    \*

[While the trial court erroneously charged Linehan with proving the statute's unconstitutionality beyond a reasonable doubt], [t]his error does not require us to reverse and remand for further consideration, provided a proper application of the law would have produced an identical result. Accordingly, we must independently evaluate whether the state has proven the law's constitutionality by demonstrating its narrow tailoring to a compelling interest.

(Citations omitted.)

Caprice contends that the portion of Minn. Stat. § 253B.19, subd. 2 (1994), which places the initial burden of going forward with the evidence on the patient seeking discharge, is unconstitutional.[2]

■ A person who seeks discharge from commitment as a psychopathic personality must follow the procedures applicable to one committed as mentally ill and dangerous.

The parties agree that *In re Linehan,* 544 N.W.2d 308 (Minn.App.1996), *review granted* (Minn. Mar. 19, 1996), does not affect the merits of this case.

Minn.Stat. § 253B.185, subd. 1 (1994) (unless otherwise specified, provisions relating to commitment as mentally ill and dangerous apply to commitment as a psychopathic personality); *Call v. Gomez*, 535 N.W.2d 312, 319 (Minn.1995) (discharge criteria in Minn. Stat. § 253B.18, subd. 15 (1994) apply to psychopathic personality commitment).

First, the committed person must petition for discharge of the commitment. Minn.Stat. § 253B.18, subd. 5 (1994). If, after a hearing and recommendation by the special review board, the Commissioner of Human Services denies the petition for discharge, the patient then may petition a judicial appeal panel for rehearing and reconsideration of the Commissioner's decision. Minn.Stat. § 253B.19, subd. 2 (1994). The panel must address whether

> the patient is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision.

Minn.Stat. § 253B.18, subd. 15 (1994); *Call*, 535 N.W.2d at 319.

Before the 1994 amendment, section 253B.19, subdivision 2, was silent as to the burden of proof. This court held the burden was on the petitioner seeking discharge to prove entitlement to discharge. *Drewes v. Levine*, 352 N.W.2d 456, 457–58 (Minn.App. 1984) (construing Minn.Stat. § 253B.18, subd. 15 (1982) and holding it applicable to Minn.Stat. § 253B.19, subd. 2 (1982)). Later, the supreme court, after upholding the constitutionality of the psychopathic personality law against substantive due process and equal protection challenges, addressed the issue:

> Although this is not a proceeding where a committed person is seeking discharge from commitment, we believe, in such a case, that the burden of proof should be on the state to show by clear and convincing evidence that commitment should continue.

*In re Blodgett*, 510 N.W.2d 910, 917 (Minn.), *cert. denied*, —— U.S. ——, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994); *see In re Harhut*, 385 N.W.2d 305, 312–13 (Minn.1986) (holding that at hearing on judicial review under Minn. Stat. § 253B.17 (1984) of indeterminate commitment as mentally retarded, burden of proof is on state to avoid serious due process concerns).

The *Blodgett* opinion was issued on January 14, 1994. 510 N.W.2d at 910. On May 10, 1994, the following amendment to Minn. Stat. § 253B.19, subd. 2, was enacted, adding the language at issue here:

> The petitioning party bears the burden of going forward with the evidence. The party opposing discharge bears the burden of proof by clear and convincing evidence that the respondent is in need of commitment.

1994 Minn. Laws ch. 636, art. 8, § 2 (codified at Minn.Stat. § 253B.19, subd. 2 (1994)).

Caprice contends that under *Blodgett*, 510 N.W.2d at 917, the burden of proof should be on the state. He argues that requiring the committed person to bear the burden of going forward with the evidence puts the initial burden of proof on the committed person, which creates serious due process concerns. *See Harhut*, 385 N.W.2d at 312 (reviewing indeterminate commitment as mentally retarded). He contends that the only way to preserve the constitutionality of the psychopathic personality statute is to hold the portion of the statute requiring the patient to go forward with the evidence unconstitutional.

The term "burden of proof" encompasses two concepts. The first is the burden of producing evidence of a particular fact satisfactory to the judge, which is also sometimes known as "the duty of going forward." 2 John W. Strong, *McCormick on Evidence* § 336, at 425 & n. 3 (4th ed. 1992) (citation omitted). Depending on the nature of this evidence, it may be sufficient to avoid a directed verdict, to permit the fact-finder to make a decision about the facts, or to constitute conclusive evidence. 2 *id.* § 338, at 435–37. The opponent may then present evidence. 2 *id.* § 338, at 437.

The second burden is the burden of persuading the trier of fact that the alleged fact is true. 2 *id.* § 336, at 425. This becomes crucial after the parties have sustained their burdens of producing evidence. 2 *id.* § 336, at 426. The fact-finder must decide the issue against the party with the burden of persua-

sion if that party fails to satisfy its burden. 2 *id.*

We now examine a recent supreme court case that analyzed discharge procedures for those committed indeterminately as mentally ill and dangerous. *Lidberg v. Steffen,* 514 N.W.2d 779 (Minn.1994) (examining Minn. Stat. § 253B.18, subd. 15 (1992)). The court characterized the case as concerning whether the state can require a person committed as mentally ill and dangerous to prove he is capable of handling less restrictive living conditions before full discharge. *Id.* at 783.

The existence of the provisional discharge procedures is critical to our result under any level of scrutiny. These procedures are better suited to a determination of the capability of a person who has been committed as M I & D for living in an open society than formal adversarial procedures initiated solely by the passage of time. The provisional discharge procedures do, in a sense, place the burden of proving the M I & D designation no longer applies on the person committed, but that burden is one the patient meets by successfully adjusting to living situations that gradually afford greater personal liberty. And, as the patient believes him or herself ready for a less restrictive placement, the patient needs only file a petition to initiate a hearing.

We would be concerned if a provisional discharge were denied without requiring those opposing the petition to establish that the individual is unable to handle a less restrictive living situation.

*Id.* at 784.

It follows from *Lidberg* that the patient may be initially required to show that he meets the standards for discharge, and that the state must then establish that the patient does not meet those standards. *Blodgett,* 510 N.W.2d at 917, and *Harhut,* 385 N.W.2d at 312–13, show that the ultimate burden of persuasion must rest with the state, as it does under section 253B.19, subdivision 2.

■ Caprice contends, in the alternative, that merely filing a petition for discharge constitutes a prima facie case. The petition is not sufficient because it contains no sworn competent testimony that would enable a fact-finder to determine the patient is ready to be discharged.

■ 2. Caprice next argues that the phrase "the burden of going forward with the evidence" in Minn.Stat. § 253B.19, subd. 2, is unconstitutionally vague. He contends that if this phrase means something other than the initial burden of proof, it is not susceptible of understanding by persons of ordinary intelligence.

■ A statute is valid if it contains a competent and official expression of legislative will. *State ex rel. Pearson v. Probate Court of Ramsey County,* 205 Minn. 545, 554, 287 N.W. 297, 302 (1939), *aff'd,* 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). If, after exhausting every rule of construction, no sensible meaning can be given to the statute, or it is so incomplete it cannot be made effective, it will be pronounced inoperative and void. *Id.* at 555, 287 N.W. at 302. As discussed above, this term has been defined, and Caprice's argument has no merit. *See 2 McCormick, supra,* § 336, at 425 & n. 3.

■ 3. Caprice next argues the discharge statute violates substantive due process because it permits continued commitment of patients who may no longer meet the criteria for commitment as a psychopathic personality. *See* Minn.Stat. § 253B.02, subd. 18a (1994) (current version of statute defining sexual psychopathic personality). The supreme court has rejected this argument, and upheld the constitutionality of the discharge standards as applied to psychopathic personality commitments. *Call,* 535 N.W.2d at 319. Even a slight improvement is not sufficient to justify discharge if the confinement bears a reasonable relation to the original reason for commitment. *Id.*[3]

■ 4. Caprice also argues that the discharge procedure violates equal protection,

---

**3.** The United States Supreme Court has accepted review of a case interpreting a statute providing for civil commitment of sexually violent predators similar to Minnesota's for hearing at its next term. *In re Hendricks,* 259 Kan. 246, 912 P.2d 129 , *cert. granted,* — U.S. —, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996).

which requires that similarly situated persons must be treated similarly. *See Harhut,* 385 N.W.2d at 310 (describing equal protection requirements under federal and state constitutions). He argues that while one committed as mentally ill and dangerous is entitled to discharge when no longer mentally ill or dangerous, one committed as a psychopathic personality may not be discharged even if he no longer meets the criteria for commitment.

Contrary to Caprice's assertion, persons committed as mentally ill and dangerous and persons committed as psychopathic personalities may be constitutionally required to meet the statutory discharge criteria, even if their disorders have become less acute than when first committed. *Call,* 535 N.W.2d at 319 (psychopathic personality); *Lidberg,* 514 N.W.2d at 783 (mentally ill and dangerous). Caprice's equal protection claim has no merit.

■ 5. Caprice next argues that commitment under the psychopathic personality statute is criminal in nature, and requires review of its constitutionality under standards applicable to criminal statutes. He contends it constitutes double jeopardy for the same reason. He asserts the primary purpose of the statute is detention, rather than treatment.

The supreme court has rejected the argument:

> [O]ur decision in *Blodgett* clearly establishes that commitment under the psychopathic personality statute is remedial and does not constitute double jeopardy because it is for treatment purposes and is not for purposes of preventive detention. 510 N.W.2d at 916; *see also Pearson,* 205 Minn. at 550, 287 N.W. at 300 (holding that a psychopathic personality commitment is not for punitive or punishment purposes, but rather is remedial because a person committed as such is entitled to receive treatment).

*Call,* 535 N.W.2d at 319–20.

■ 6. The final issue is whether the session law by which the psychopathic per-

sonality statute was amended to add the burden of proof provisions in section 253B.19, subdivision 2, violates the "single subject" rule. "No law shall embrace more than one subject, which shall be expressed in its title." Minn. Const. art. IV, § 17. The purpose of the requirement is to provide notice of interests likely to be affected and prevent surprise and fraud. *Wass v. Anderson,* 312 Minn. 394, 398, 252 N.W.2d 131, 134–35 (1977). It is also to prevent "logrolling," the combination of different and disconnected subjects. *Id.* at 401, 252 N.W.2d at 136. This rule is not violated so long as there is a common thread running through the provisions of the bill which make them germane to each other. *Blanch v. Suburban Hennepin Regional Park Dist.,* 449 N.W.2d 150, 155 (Minn.1989).

■ The provision adding the burden of proof section to Minn.Stat. § 253B.19, subd. 2, is found at 1994 Minn. Laws ch. 636, art. 8, § 2. Chapter 636 is entitled "an act relating to crime and crime prevention," followed by specific descriptions of the sections of the act.[4]

Caprice claims that because the title to chapter 636 refers to "crime and crime prevention," any provision of civil law in the bill cannot be germane. Alternatively, he contends that this means the amendment and commitment statute are criminal in nature, requiring application of criminal standards for determining their constitutionality.

Many laws aimed at preventing crime are civil rather than criminal. An amendment to the statute relating to discharge procedures for psychopathic personalities can also be thought of as a way of preventing crime by ensuring that only patients who are ready will be discharged. Thus, the "single subject" rule was not violated.

## DECISION

The decision by the judicial appeal panel upholding the order of the Commissioner of

---

4. While Caprice cites a different version of the title, we refer to the title contained in 1994 Minn. Laws ch. 636. *See Wass,* 312 Minn. at 395–96, 252 N.W.2d at 133–34 (using title from Minn. Laws).

Human Services to deny Caprice's petition for discharge is affirmed.

**Affirmed.**