Christopher R. COKER, Appellant,

v.

Cal R. LUDEMAN, Commissioner of
Human Services, Respondent.

No. A09–1104.

Court of Appeals of Minnesota.

Dec. 8, 2009.

Marilyn B. Knudsen, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, Robin Vue–Benson, Assistant Attorney General, St. Paul, MN, for respondent Commissioner of Human Services.

Michael O. Freeman, Hennepin County Attorney, Theresa F. Couri, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County.

Considered and decided by HUDSON, Presiding Judge; LANSING, Judge; and SHUMAKER, Judge.

## OPINION

HUDSON, Judge.

On appeal from a judicial appeal panel order denying his petition for transfer, discharge, or provisional discharge from civil commitment as a sexually dangerous person, appellant argues that the judicial appeal panel (appeal panel) applied the wrong evidentiary burden under Minn. Stat. § 253B.19, subd. 2(d), by requiring him to show that he met the statutory criteria for transfer, discharge, or provisional discharge by a preponderance of the evidence rather than requiring him to simply go forward with evidence. He further argues that he met his burden of going forward and, accordingly, the state was required to show, by clear and convincing evidence, that his commitment should continue. Because the appeal panel applied the wrong evidentiary burden, we reverse and remand.

## FACTS

Appellant Christopher R. Coker's earliest criminal charge for sex-related conduct occurred in 1986, when he was charged with indecent conduct for grabbing a female high-school student's buttocks. In 1988, Coker was convicted of promoting prostitution for coercing a 16–year–old female runaway to prostitute for him after sexually assaulting her four times over a 24–hour period. He pleaded guilty and was sentenced to 13 months, with a furlough for chemical-dependency treatment to Portland Half-way House. After two weeks in treatment, Coker absconded, and his furlough was revoked.

In December 1991, Coker abducted and raped a 15–year–old girl. In May 1992, he raped another 15–year–old girl. On July 1, 1992, Coker raped a 17–year–old girl. Coker was charged with third-degree criminal sexual conduct for the July 1992 rape, pleaded guilty, and was sentenced to 32 months. In 1995, Coker's DNA linked him to the December 1991 and May 1992 rapes. Coker pleaded guilty to third-degree criminal sexual conduct for each rape. He was sentenced to 78 months for the December 1991 rape and 98 months with probation for 15 years for the May 1992 rape.

In December 1999, Coker was committed initially as a sexually dangerous person. He was indeterminately committed on March 29, 2000. Coker entered the Minnesota Sex Offender Program (MSOP) on January 5, 2001 at MSOP's Moose Lake facility and was transferred to MSOP's Supervised Integration (MSI) unit on October 5, 2006.

While in MSOP, Coker has participated in sex-offender treatment and has made significant progress in many areas. In April 2009, he was approved for on-campus activities without a staff escort. In treatment, Coker has focused on "management

of his currently identified dynamic risk factors which are deviant sexual interests, criminal attitudes, impulsivity, cooperation with supervision, intimacy deficits, educational issues and discharge planning." Coker has diagnoses of paraphilia; alcohol and cocaine abuse, in remission in a controlled environment; antisocial personality disorder; narcissistic traits; and borderline intellectual functioning.

After transferring to MSI, Coker petitioned the special review board for transfer to a nonsecure facility, provisional discharge, and discharge from civil commitment. The board recommended that Coker continue treatment in a secure facility. In accordance with the board's recommendations, the Commissioner of Human Services (the commissioner) denied Coker's petition. On March 15, 2007, Coker petitioned for review and reconsideration of the commissioner's denial of his petition before the appeal panel.

The appeal panel conducted a hearing on January 9, 2009 and April 17, 2009. Independent examiner James M. Alsdurf, Ph. D., LP, testified that Coker "continues to require treatment at MSOP, [and] that his risk level remains sufficiently high to require services available to him only in this treatment setting." Dr. Alsdurf submitted a report that recommended that Coker not be released into a less-restrictive environment and that Coker should continue at MSOP. Dr. Alsdurf's testimony and report noted that Coker's psychopathology was an area of ongoing clinical concern. A 2007 risk appraisal revealed that Coker met the criteria for designation as a psychopath. Dr. Alsdurf testified that the gradual step-down process through MSOP was the best way for Coker to succeed in his treatment. But Dr. Alsdurf also testified that sexual deviance was no longer an issue for Coker and that clinical concern over sexual deviance "has essentially re-

mitted" as of December 18, 2008. Dr. Alsdurf called Coker a "treatment success" but explained that more work needed to be done.

Coker testified that he is currently in treatment, working, and attending educational classes at MSOP. Coker identified his risk factors and his plans for controlling them in the future. He testified that, if released, he would live with his sister and would comply with the terms of a discharge plan set by his case manager and MSOP. He also acknowledged that staff had not helped him to prepare his discharge plan. Coker testified that he believes he is on probation until 2015 and that he would comply with any terms of probation. Coker also inquired into the possibility of being accepted into Project Pathfinder, a nonprofit sexual-violence and sexual-abuse treatment program, if he were to be released. Acceptance into that program is conditioned upon consensus of the program's treatment team, and evaluation for entrance into the program takes place after a patient is released from commitment. Coker's acceptance into Project Pathfinder was deferred on that basis. Coker stated that he could continue to benefit from MSOP treatment and sees value in it, but believes that, if released, he would have better employment opportunities and a chance to show what he has learned.

Paul McHale, a volunteer who has visited appellant for two years, testified that he would be willing to help Coker find employment, accompany him to meetings, and provide transportation.

At the close of Coker's case, the commissioner and Hennepin County moved for dismissal of Coker's petition pursuant to Minn. R. Civ. P. 41.02(b). The appeal panel granted the dismissal motion and affirmed the commissioner's order denying Coker's petition. This appeal follows.

## ISSUE

Did the appeal panel apply the wrong evidentiary burden and require Coker to bear the burden of persuasion on the statutory criteria for transfer, discharge, or provisional discharge?

## ANALYSIS

 Coker's petition requested a change in custody status: specifically, transfer, discharge, or provisional discharge. Coker argues that the appeal panel incorrectly required him to show, by a preponderance of the evidence, that he satisfied the respective statutory criteria for transfer, discharge, or provisional discharge. Determining whether the appeal panel applied the proper evidentiary burden requires interpretation of Minn.Stat. § 253B.19, subd. 2 (2008). Statutory construction is a legal issue, which we review de novo. *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117, 122 (Minn.2007). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). When statutory language is clear, we rely on its plain meaning. *Correll v. Distinctive Dental Servs.,* 607 N.W.2d 440, 445 (Minn.2000). Phrases that have acquired a special meaning are construed according to that special meaning. Minn.Stat. § 645.08(1) (2008).

Before 1994, Minn.Stat. § 253B.19, subd. 2, did not state a burden of proof. *Caprice v. Gomez,* 552 N.W.2d 753, 757 (Minn.App. 1996), *review denied* (Minn. Oct. 29, 1996).

Under the pre–1994 statutory framework, this court held that the burden was on the petitioner seeking a discharge or transfer to show that he or she is entitled to discharge and that "the state's interest in the health and safety of the public and mentally ill and dangerous patients is adequately served by a preponderance of the evidence burden." *Drewes v. Levine,* 352 N.W.2d 456, 458 (Minn.App.1984).[1]

But in 1994, the Minnesota Supreme Court, after upholding the constitutionality of the psychopathic-personality statute against equal-protection and substantive due-process challenges, noted that when a committed person seeks a discharge from commitment, "the burden of proof should be on the state to show by clear and convincing evidence that commitment should continue." *In re Blodgett,* 510 N.W.2d 910, 917 (Minn.1994), *cert. denied,* 513 U.S. 849, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994). Following *Blodgett,* the legislature amended Minn.Stat. § 253B.19, subd. 2, adding the current language that defines the respective burdens of parties appearing in proceedings before the appeal panel. *See* 1994 Minn. Laws ch. 636, art. 8, § 2, at 2304. Thus, under the current statutory framework, in a rehearing before the appeal panel for transfer, discharge, or provisional discharge from commitment, "[t]he petitioning party bears the burden of going forward with the evidence. The party opposing discharge bears the burden of proof by clear and convincing evidence that the [petitioning party] is in need of commitment." Minn.Stat. § 253B.19, subd. 2(d).[2]

---

1. The statutory provisions pertaining to persons who are mentally ill and dangerous to the public, Minn.Stat. § 253B.18 (2008), also apply to sexually dangerous persons or persons with a sexual psychopathic personality. Minn.Stat. § 253B.185, subd. 1 (2008).

2. It appears that the respective burdens set forth in Minn.Stat. § 253B.19, subd. 2(d), apply to all petitions for changes in custody, irrespective of the specific relief requested. *See Rydberg v. Goodno,* 689 N.W.2d 310, 314 (Minn.App.2004) (holding that because a discharge decision under Minn.Stat. § 253B.19, subd. 2, requires clear and convincing proof

Because Coker has appealed the denial of his requests for transfer, discharge, and provisional discharge, we address each in turn.

**Transfer request**

■ Coker argues that the appeal panel erred by applying the preponderance-of-the-evidence burden of proof to his transfer request. We agree.

Under the plain language of the amended statute, "[t]he petitioning party bears the burden of going forward with the evidence." *Id.* Significantly, in the context of an appeal from the denial of a change-in-custody status, we have previously held that "the duty of going forward" is "the burden of producing evidence of a particular fact satisfactory to the judge." *Caprice*, 552 N.W.2d at 757. This is a production burden that may be met with evidence that is "sufficient to avoid a directed verdict, to permit the fact-finder to make a decision about the facts, or to constitute conclusive evidence." *Id.*[3] A patient seeking discharge "may be initially required to show that he meets the standards for discharge, and ... the state must then establish that the patient does not meet those standards." *Id.* at 758. Merely filing a petition for discharge is not sufficient to meet this burden because there must be some "sworn competent testimony that would

enable a fact-finder to determine the patient is ready to be discharged" under the statutory requirements. *Id.* Based on *Caprice* and our canons of statutory construction, we conclude that Minn.Stat. § 253B.19, subd. 2(d), calls for a burden of production only, not a burden of persuasion.[4] *See State v. Charlton*, 338 N.W.2d 26, 29 (Minn.1983) (stating that a burden requiring a party to "come forward" is "one of production").

Here, when reviewing Coker's request for a transfer, the appeal panel applied a heavier burden of proof by requiring that Coker make a prima facie case for transfer by a preponderance of the evidence. In its conclusions of law, the appeal panel stated that "[t]he statute and case law require that the party seeking a transfer must prove that the transfer is appropriate by a preponderance of the evidence," citing *Piotter v. Steffen*, 490 N.W.2d 915 (Minn. App.1992), *review denied* (Minn. Nov. 17, 1992), and *Linder v. Comm'r of Human Servs.*, 394 N.W.2d 824 (Minn.App.1986). But *Linder* and *Piotter* predate the 1994 amendment to Minn.Stat. § 253B.19, subd. 2, and do not fully state the requirements of the subsequent statute. Accordingly, the appeal panel erred by requiring Coker to show that he satisfied the statutory criteria for transfer by a preponderance of the evidence. Under the plain language of the statute, Coker was only required to go

---

by those objecting, so, too, should a decision on pass-eligible status).

**3.** "The party having [the burden of going forward with the evidence] must introduce some evidence if he wishes to get a certain issue into the case. If he introduces enough evidence to require consideration of this issue, this burden has been met." Rollin M. Perkins & Ronald N. Boyce, *Criminal Law*, 78 (3d ed.1982), *quoted in Black's Law Dictionary* 223 (9th ed.2009).

**4.** The ambiguous term "burden of proof" refers to two different concepts. Bryan A. Gar-

ner, *A Dictionary of Modern Legal Usage* 121 (2d ed.1995). The first is the burden of persuasion. This burden is met by "convincing the fact-finder to view the facts in a way that favors that party. Today the phrase *burden of proof* most often bears this meaning." *Id.* The second concept is the duty of going forward with evidence or the burden of production. "A party meets this burden by introducing enough evidence to have a given issue considered in the case." *Id.; see also Black's Law Dictionary* 229 (9th ed. 2009) ("The burden of proof includes both the *burden of persuasion* and the *burden of production*.").

forward by producing enough evidence to have the issue of transfer considered by the appeal panel.

**Discharge and provisional discharge requests**

■ The language in the appeal panel's order relating to discharge and provisional discharge suggests that, on those issues as well, the appeal panel applied a higher burden to Coker than that of going forward with the evidence. The appeal panel concluded that Coker did not sustain "his burden of presenting evidence to establish a prima facie case for a full discharge because *he has not shown* that" he meets the statutory elements. (Emphasis added.) To "show" has been defined as "[t]o make (facts, etc.) apparent or clear by evidence; to prove." *Black's Law Dictionary* 1505 (9th ed.2009). The "has not shown" language in the order therefore implies that a burden of persuasion was applied to Coker's request for discharge. Similarly, the absence of language in the appeal panel's order identifying the burden applied to Coker's request for provisional discharge leads us to believe that the same stricter burden of persuasion was also applied there. Moreover, the sheer volume of evidence that Coker submitted—much of which arguably supported his requests for discharge or provisional discharge— strongly suggests that the appeal panel applied a higher burden of persuasion to Coker's requests. But again, the lesser burden of going forward with the evidence under Minn.Stat. § 253B.19, subd. 2(d), is a burden of production rather than of persuasion. Accordingly, the petitioner need not actually prove anything, but instead must only present evidence on each element sufficient to avoid judgment as a matter of law. *Caprice,* 552 N.W.2d at 757.

■ To be clear, we do not hold today that a petitioner has no duty to demonstrate to the appeal panel sufficient evidence that he or she meets the statutory criteria for transfer, discharge, or provisional discharge. Nor is the burden met merely by filing a petition for a change in custody. We simply hold—as the statute dictates—that a petitioning party bears only a burden of going forward with evidence that he or she meets the statutory criteria for transfer, discharge, or provisional discharge. Once that lesser burden is met, the party opposing the petition must show by clear and convincing evidence that the petitioning party is still in need of commitment. *See* Minn.Stat. § 253B.19, subd. 2(d); *Rydberg,* 689 N.W.2d at 314 (concluding that once petitioner's burden is met, the burden shifts to the party opposing the change in status); *Caprice,* 552 N.W.2d at 758 (noting that petitioner must show that he meets the standard for discharge and then the burden will shift to the opposing party).

**DECISION**

The appeal panel erred by applying a higher burden than that permitted under Minn.Stat. § 253B.19, subd. 2(d). Accordingly, we reverse and remand for a new hearing before the appeal panel so that the correct burden of production can be applied to Coker's petition for relief. We take no position on whether Coker's petition met his burden for transfer, discharge, or provisional discharge in the previous hearing. At its discretion, the appeal panel may consider all evidence relevant to the relief requested and is not limited to the record from the previous proceeding and/or hearing before the appeal panel in January and April 2009.

**Reversed and remanded.**