*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1439
A15-1445
A15-1606**

Christopher R. Coker,
Respondent (A15-1439, A15-1445),
Appellant (A15-1606),

vs.

Emily Johnson Piper, Commissioner of Human Services,
Appellant (A15-1439),
Respondent (A15-1606),

Hennepin County,
Appellant (A15-1445).

**Filed January 25, 2016
Affirmed; motion denied
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-P5-99-060277

Marilyn B. Knudsen, St. Paul, Minnesota (for Christopher R. Coker)

Lori Swanson, Attorney General, Scott H. Ikeda, Anthony R. Noss, Assistant Attorneys General, St. Paul, Minnesota (for Commissioner of Human Services)

Michael O. Freeman, Hennepin County Attorney, Theresa Couri, John L. Kirwin, Assistant County Attorneys, Minneapolis, Minnesota (for Hennepin County)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant, the Commissioner of Human Services, argues the judicial appeal panel (the panel) should not have granted respondent Christopher Coker's provisional discharge from the Minnesota Sex Offender Treatment Program (MSOP) because the record does not support the panel's underlying findings of fact and because the panel improperly took judicial notice of certain evidence. Coker cross-appeals, arguing that the panel erred by determining that he had not met his burden of production with respect to his petition for full discharge. Coker also moves this court to disqualify the attorney general as a party to this appeal. We affirm the decision of the panel and deny the motion.

## FACTS

Coker was convicted three times of third-degree criminal sexual conduct for raping three minor girls in different incidents between December 1991 and July 1992. After serving prison sentences for the crimes, he was indeterminately civilly committed to MSOP as a sexually-dangerous person in March 2000. A person who is committed as a sexually-dangerous person may petition the special review board for a discharge or a provisional discharge from commitment. Minn. Stat. § 253D.27, subds. 1, 2 (2014). If the board recommends that the commissioner deny that person's discharge petition, that person may request reconsideration by the panel. *Coker v. Jesson (Coker II)*, 831 N.W.2d 483, 485 (Minn. 2013).

In 2006, Coker petitioned the commissioner, requesting a transfer of facilities, a provisional discharge, or a full discharge from MSOP. The board denied his petition and the panel affirmed the board's decision. In 2009, this court reversed the panel's decision and remanded for further hearings. *Coker v. Ludeman (Coker I)*, 775 N.W.2d 660, 661 (Minn. App. 2009), *review dismissed* (Minn. Feb. 24, 2010). This court found that the panel had applied the wrong burden of proof when it required Coker to show by a preponderance of the evidence that he had satisfied the statute. *Id.* at 665.

On remand, the panel granted respondent's petition to transfer facilities and remanded Coker's request for provisional discharge to the board. *Coker II*, 831 N.W.2d at 487. The board denied Coker's petition for provisional discharge, and this decision was affirmed by the panel and this court. *Id.* at 485. The supreme court reversed this court's decision, finding that Coker had satisfied his burden of production as to the petition for provisional discharge and that the panel committed reversible error by not shifting the burden of proof to the commissioner. *Id.* at 492.

On August 21, 2015, the panel granted Coker's petition for provisional discharge and denied his petition for full discharge. The panel held that the commissioner had not met its burden of persuasion as to the provisional discharge because it "failed to prove by clear and convincing evidence that [Coker] continues to need treatment and supervision in his current treatment setting." In addition, the panel found that Coker "has never had an incident nor demonstrated behavior that would suggest he continues to be a danger to the community." On this issue, the panel concluded that the "supervision and support provided in his provisional discharge plan . . . will provide a reasonable degree of protection to the

3

public." However, the panel concluded that Coker had not met his burden of production in support of a full discharge and, moreover, the commissioner had proved by clear and convincing evidence that a full discharge was not appropriate. The Chief Judge dissented from the panel's decision granting provisional discharge. These consolidated appeals followed.

## D E C I S I O N

### Provisional discharge

The commissioner challenges the panel's decision that Coker should be provisionally discharged. "Generally, this court reviews decisions by a judicial appeal panel for clear error, examin[ing] the record to determine whether the evidence as a whole sustains the appeal panel's findings and not weigh[ing] the evidence as if trying the matter de novo." *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014) (alteration in original) (quotations omitted). "Findings of fact will not be reversed if the record as a whole sustains those findings." *Rydberg v. Goodno*, 689 N.W.2d 310, 313 (Minn. App. 2004).

A committed person may be fully discharged from MSOP only if the panel determines that "the committed person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision." Minn. Stat. § 253D.31 (2014). In assessing a petition for discharge, the panel must consider "whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting

4

to the community." *Id.* "If the desired conditions do not exist, the discharge shall not be granted." *Id.*

A different standard applies to a petition for provisional discharge. A committed person may be provisionally discharged if the panel determines that "the committed person is capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (2014). The panel must consider two factors in determining whether to order a provisional discharge:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.*, subd. 1(b) (2014). In a proceeding before the panel, the petitioner "'bears the burden of going forward with the evidence, which means presenting a prima facie case.'" *Coker II*, 831 N.W.2d at 485-86 (quoting Minn. Stat. § 253B.19, subd. 2(d) (2012)). This is the burden of production. *Id.* at 486. To satisfy the burden of production, the petitioner must "come forward with sufficient, competent evidence that, if proven, would entitle the petitioner to relief." *Id.* (quotation omitted). "If the petitioner satisfies the burden of production at this 'first-phase hearing,' the proceeding advances to a 'second-phase hearing' and the burden shifts to the commissioner, who bears a burden of persuasion on the merits of a discharge petition." *Larson*, 847 N.W.2d at 535. At that point, "the

commissioner must prove by clear and convincing evidence that the discharge or provisional discharge should be denied." *Id.* (quotation omitted).

The supreme court held in *Coker II* that Coker had met his burden of production as to the provisional discharge petition. 831 N.W.2d at 491. On remand, the panel held a second-phase hearing and concluded that the commissioner had not proved by clear and convincing evidence that Coker needed continued treatment and supervision in his current setting or that the provisional discharge plan did not provide a reasonable degree of protection to the public. The commissioner challenges each of these determinations.

*Treatment and supervision*

The panel determined that the commissioner had not proved by clear and convincing evidence that Coker required continued treatment and supervision in his current setting. The commissioner argues that the consensus of its five expert witnesses that Coker requires treatment in his current setting made the panel's conclusion to the contrary clear error.

Generally, the trier of fact "will be in the best position to determine the weight to be attributed to each factor, as well as to evaluate the credibility of witnesses—a critical function in [commitment] cases that rely so heavily on the opinions of experts." *In re Civil Commitment of Ince,* 847 N.W.2d 13, 23-24 (Minn. 2014). "It is well established . . . that a trier of fact is free to accept part and reject part of a witness's testimony." *Coker II*, 831 N.W.2d at 492.

In *Coker II*, the supreme court applied this rule. The court explained that a trier of fact could credit portions of an expert's testimony, such as that of court-appointed examiner Dr. James Alsdurf, while discrediting other portions. On remand, "a trier of fact could

6

reject Dr. Alsdurf's opinion that Coker was not ready for provisional discharge, and yet accept Dr. Alsdurf's more favorable testimony, which included Dr. Alsdurf's statements that Coker had made considerable progress and had accomplished more than anyone else that he had evaluated at MSOP." *Coker II*, 831 N.W.2d at 492.

The panel's August 21, 2015 order attempts to reconcile the commissioner's expert testimony concluding that Coker is not amenable to provisional discharge with Coker's non-expert testimony that Coker has been highly successful in treatment. As the panel acknowledged, "there [are] no professional expert witnesses that are able to support" Coker's petition for provisional discharge. Not only did the experts oppose provisional discharge, but they testified to many facts about Coker's treatment in support of this conclusion. The experts testified that Coker continued to have issues with emotional regulation and trust in the treatment program.

In the absence of expert testimony to support Coker's petition, the panel credited an annual progress report that reflected a more positive understanding of Coker's progress. The panel emphasized that the report was prepared by Coker's "primary therapist who knows him best and sees him frequently." On topics related to emotional regulation and self-monitoring, areas where the expert witnesses had expressed concern, Coker received scores of satisfactory or above. The panel concluded that this report conflicted with the expert testimony and gave the report more weight because it was prepared by Coker's closest therapist. Although generally positive about his treatment prospects, the report does not explicitly endorse a change in Coker's program or state that he is no longer in need of his current treatment program.

7

The panel also credited testimony by individuals attesting to Coker's sociable and productive behavior. An MSOP security staff member testified that Coker did not create problems and was helpful. Another security staff member testified that he had accompanied Coker on about 30 trips into the community and Coker had no behavioral problems. Coker volunteers his time both at MSOP and in the community.

The panel also noted that, although he may still have behavioral challenges, Coker has made "great progress away from sexual dangerousness." Dr. Alsdurf testified that as to Coker's diagnosis, sexual deviance is not a concern and has not been for a long time. Dr. Haley Fox, the Clinical Director of MSOP, testified that Coker had not had any incidents of sexual or violent misconduct while in MSOP and that sexual arousal testing had not shown any inappropriate arousal. The panel credited Coker's evidence that he has made major improvement in his behavior and sexual stability.

Finally, the panel rejected the commissioner's arguments attempting to impeach Coker's commitment to treatment based on what the panel called "understandable" sexual desires. The commissioner cites some experts' concerns about sexual "preoccupation," based on Coker's expressed desire to, under the conditions of his provisional discharge, be permitted to have sex with his fiancée of 12 years. The commissioner does not contend that these feelings have manifested in a problematic way during treatment. In fact, Coker has not had a concerning sexual incident during his 15-year commitment. The panel properly rejected any attempt to present Coker's advocacy for favorable provisional release conditions as evidence of a problematic sexual preoccupation.

The panel chose to credit the testimony of lay witnesses, the report of Coker's closest therapist and portions of the experts' testimony that spoke to Coker's great progress. It chose to discredit portions of the expert testimony stating that he still required treatment in his current environment. The panel's decisions regarding the weight of evidence are due great deference. The finding that Coker no longer required treatment and supervision in his current setting is not clearly erroneous.

*Protection to the public*

The panel also held that the commissioner failed to prove by clear and convincing evidence that the provisional release plan did not provide a reasonable degree of protection to the public. The commissioner argues that this conclusion is clearly erroneous.

Although medical experts opposed provisional discharge, the panel also considered other evidence. The testimony of other MSOP staff described Coker as a cooperative person and a positive force at MSOP. Testimony indicated that Coker "conducts himself respectfully" and "has behaved appropriately in the community." Also, the panel found Coker has personal support that gives him a more promising outlook for successful provisional discharge. It found that he "has a very close knit and large family" that provides "a far stronger family support system than most patients" have. Coker's family has located a job for him if he were discharged. He also has a fiancée of 12 years who has participated in couple's therapy with him.

Additionally, as discussed above, Coker's therapists no longer regard him as sexually deviant. The experts' concern for public safety is primarily related to his emotional regulation and his ability to handle criticism or conflict. Coker has also aged

9

out of the highest-threat age group for sex-crime recidivism. The panel emphasized that although Coker's continuing emotional issues may make the transition into the community difficult, his "great progress away from sexual dangerousness" meant that the provisional discharge plan could provide adequate protection to the public.

The panel is free to accept the expert testimony regarding Coker's progress in treatment while rejecting the experts' conclusion that Coker was not amenable to provisional discharge, so long as that decision is not clearly erroneous. All parties to this case agree that Coker has made significant strides during his treatment and is far more capable of living outside MSOP than when he was committed 15 years ago. The panel did not misstate facts or misinterpret evidence in a clearly erroneous manner. Rather they concluded that, despite the opposition of MSOP experts, Coker's treatment progress was sufficient for provisional release. The panel recognized the uncertainty of Coker's commitment to complying with all terms of his provisional discharge plan, but concluded, "[t]he only way to test Mr. Coker's sincerity in cooperating with a provisional discharge is to put him to the test."

The panel determined that the commissioner had not proved by clear and convincing evidence that Coker requires continued treatment and supervision in his current setting or that the provisional release plan could not provide reasonable protection to the public. These findings and the panel's decision granting provisional release are not clearly erroneous. Because this case can be decided on other grounds, this court need not reach the constitutional issue presented by Coker. *State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006).

**Judicial notice**

"A court may take judicial notice, whether requested or not." Minn. R. Evid. 201(c). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *In re Zemple*, 489 N.W.2d 818, 819 (Minn. App. 1992) (quotation omitted). "Judicial notice is intended to expedite litigation by avoiding the time and expense of formally proving factual matters that can be established by unquestionable sources of information." *Fluoroware, Inc. v. Chubb Grp. of Ins. Cos.*, 545 N.W.2d 678, 684 (Minn. App. 1996) (quotation omitted). However, "[j]udicial notice is to be taken with caution and every reasonable doubt as to the propriety of its exercise in a given case should be resolved against it." *Nat'l Recruiters, Inc. v. Toro Co.*, 343 N.W.2d 704, 708 (Minn. App. 1984). "A district court's decision whether to take judicial notice of proffered facts is an evidentiary ruling that we review only for abuse of discretion." *Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 71 (Minn. App. 2015), *review denied* (June 30, 2015).

The commissioner argues that the panel abused its discretion by taking judicial notice on two issues. First, the panel stated that it was

> aware of the recent Federal Court decision [*Karsjens v. Jesson*, Civ. No. 11-3659, 2015 WL 3755870 (D. Minn. June 17, 2015)] finding MSOP to be unconstitutional due to a variety of shortcomings in the program, including numerous changes to the treatment program resulting in patients having to sometimes repeat modules or start treatment over based on new expectations; it being virtually impossible for a patient to

11

progress to even provisional discharge let alone a full discharge; the failure of the legislature to require periodic reviews of patients to determine if they even still meet the standards for their original commitment.

The commissioner argues that the failure to notify the parties and provide an opportunity to respond before taking notice of that decision was an abuse of discretion.

Rules regarding judicial notice in civil cases apply only to adjudicative facts. Minn. R. Evid. 201(a). The panel referred to this federal case, but it did not state that the federal court's findings were being adopted or judicially noticed as adjudicative facts in this case. In addition, the panel's reasoning does not rely on this federal case. Although the panel briefly noted the existence of this case, it did not take judicial notice of it.

Second, the panel stated, "This court also takes judicial notice that many of the patients from MSOP have a lack of trust in the treatment program because of numerous changes to the program over the years and the fact that virtually no one has ever progressed to provisional discharge." The statement regarding a lack of trust by patients was an inference from facts in evidence. Dr. Alsdurf testified about Coker, stating,

> trust is obviously an issue that is very complicated for him for a variety of reasons. He, like many people in the MSOP system, have had complaints that are legitimate in terms of the clarity of the treatment process and probably, at times, the way in which people have even been treated by treatment staff.

Testimony was given that some MSOP patients had trust issues with the system based on the treatment process, and the panel did not need to take judicial notice of this fact.

The statement that "virtually no one has ever progressed to provisional discharge," could be verified by sources whose accuracy could not be reasonably questioned. For

12

instance, a 2011 report by the Minnesota Office of the Legislative Auditor stated that "no sex offender has ever been discharged from MSOP" and that at that time only one offender had been granted provisional discharge. Minn. Office of the Legislative Auditor 19 (2011), *Evaluation Report: Civil Commitment of Sex Offenders*. This report also documented the frequent changes in leadership and policy that the panel referred to. *Id.* at 58-61. The court's statement can be supported by evidence in the record and sources that cannot be reasonably questioned. The findings do not constitute an abuse of discretion.

**Full discharge**

Coker argues that the panel erred by denying his petition for full discharge. Coker argues that the supreme court's decision in *Coker II* held that he had met the burden of production as to his petition for discharge. Therefore, he argues, the panel erred by holding that Coker had not met this burden.

In *Coker II*, the supreme court found that Coker had met the burden of production as to his petition for provisional discharge. 831 N.W.2d at 485. It addressed only Coker's petition for provisional discharge, not his petition for full discharge. *Id.* ("Coker challenges the denial of his petition for provisional discharge from civil commitment."). The supreme court did not, as Coker argues, find that he had met his burden of production as to the petition for full discharge. The panel did not err by requiring respondent to meet this burden on remand. As discussed above, voluminous evidence of experts supported the conclusion that Coker continued to require treatment and continued to present some danger to the public. The panel did not commit clear error by concluding Coker had not met his burden of production as to his petition for full discharge.

13

**Motion to disqualify**

Finally, Coker moved for this court to disqualify the attorney general as a party to this appeal and to strike the appeal, A15-1439, filed by the attorney general. This issue was not timely raised before the panel and thus cannot be raised on appeal. A non-dispositive motion must be served on the non-moving party at least 14 days before the hearing. Minn. R. Gen. Pract. 115.04(a); *Rhee v. Golden Home Builders, Inc.*, 617 N.W.2d 618, 621 (Minn. App. 2000). Coker filed a motion to disqualify the attorney general before the panel on January 12, 2015, just one day before that motion was to be heard at a January 13 hearing. The panel properly found the motion untimely. Although the panel briefly addressed the merits of the motion, this was in dicta after it stated it did not need to reach the merits of the untimely motion. Thus, Coker's motion to this court is denied because the disqualification of the attorney general was forfeited as an issue for appeal. *State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) ("[F]orfeiture is the failure to make the timely assertion of a right . . . .").

**Affirmed; motion denied.**